**Richard LOOK, Plaintiff-Appellant,**

v.

**Margaret HECKLER, Secretary, U.S. Department of Health and Human Services, Defendant-Appellee.**

No. 84–1705.

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1985.

Decided Oct. 17, 1985.

Craig A. Fobes, Madison, Wis., for plaintiff-appellant.

Jan Leese Lowes, Chicago, Ill., for defendant-appellee.

Before FLAUM and EASTERBROOK, Circuit Judges, and DUMBAULD, Senior District Judge.*

---

* The Honorable Edward Dumbauld, Senior District Judge for the Western District of Pennsylvania, is sitting by designation.

FLAUM, Circuit Judge.

Plaintiff-appellant Richard Look appeals from the district court's order affirming a final decision by defendant-appellee Secretary of the U.S. Department of Health and Human Services (the "Secretary") denying Look's application for Social Security disability benefits and Supplemental Security Income ("SSI"). For the reasons set forth below, we reverse and remand for the Secretary to reconsider Look's disability claim.

## I.

Richard Look submitted an application for disability benefits and SSI on February 16, 1982, claiming that he had been disabled since October 1, 1981. After two initial decisions by the Social Security Administration ("SSA") finding him not to be disabled and denying him benefits, Look timely requested a hearing *de novo* before an administrative law judge ("ALJ") on the disability claim. Such a hearing was held on October 28, 1982.

At the time of this hearing, Look was thirty years old, divorced, and unemployed. He had held various jobs between 1969 and 1981, including jobs as a bartender and a packager of computer discs. In 1967, Look had sustained skull fractures and other injuries as a result of an automobile accident. Look testified at the hearing that he could no longer work because he suffered from both severe headaches and back pain. He described his headaches in some detail, stating that when they occur, the "whole left side of my face just knots up, my teeth hurt and my vision gets blurred. I get nauseous sometimes and I'm just unable to function ... the headaches just leave me immobile...." He also testified that: "The migraine headaches keep me from daily activities and I have no idea when they're going to occur. I get them almost every day, sometimes twice a day...." Look explained that the headaches usually last about twenty minutes, and that he relieves them by taking specific medication prescribed for the headaches. As to his back pain, Look explained that he sometimes experiences an ache in the lower part of his back that "makes it difficult even often times to get out of the bathtub.... Even putting my socks on sometimes is a real difficult chore." He further related that when his back hurts at night, he is unable to sleep and therefore unable to function the next day.

Look's complaints concerning his headaches were corroborated by several written reports by Dr. Charles W. Docter that were introduced as exhibits at the hearing. Dr. Docter explained that he had known Look for a number of years as a friend of Look's family, and had recently begun treating Look for his headaches. Dr. Docter stated that Look had been previously diagnosed at the Mayo Clinic as suffering from "cluster headaches—a type of vascular headache," and that Dr. Docter agreed with this diagnosis. Further, Dr. Docter said that he had prescribed for Look a "medication which is fairly specific for this ailment," and that this medication "provides partial control of the condition." With regard to the frequency of Look's headaches, Dr. Docter stated that they sometimes occur every day, but at other times occur only every few days. Nevertheless, when Look does have one of the cluster headaches, according to Dr. Docter, "it tends to literally knock him out for several days." Based on these observations, Dr. Docter offered the opinion that: "The frequency and severity of these headaches restrict his ability to perform work related functions and render him disabled."

The only other medical evidence presented at the hearing related to Look's claim of back pain. Prior to the hearing, SSA had referred Look to a consulting physician, Dr. A. Hamid Kahn, for an orthopedic examination. Dr. Kahn compiled a written report describing the results of various x-rays and neurological examinations that he performed on Look, and this report was introduced as an exhibit at the hearing. Dr. Kahn ultimately concluded from his observations that when Look's back was not sore he could walk about 2–3 miles and lift up to 100 pounds, and that even when his back was sore he could walk at least

2–3 blocks and lift about 15–20 pounds. Dr. Kahn also found that Look could stand intermittently for 10–15 minutes. Dr. Kahn did not mention Look's headaches in his report.

The final witness at the hearing was Look's friend and roommate, Terry Barby. Barby, a twenty-two year old practical nurse, testified that Look had first moved in with her only a few months prior to the hearing, but that she had known him since 1976. She confirmed that she had frequently observed Look to be suffering from severe headaches, and that when he suffers from these headaches, "[h]e can't do anything." When one of the headaches occurs, Barby related, Look takes two of the pills prescribed by Dr. Docter, and the headache usually goes away within twenty minutes. Barby added, however, that sometimes the headaches do not respond so quickly to the medication, and that Look therefore has to take additional doses of the medication. Barby also related that Look sometimes experiences "mild" headaches, but that even these headaches leave him immobilized for a period of time.

The ALJ issued an opinion denying Look's disability claim on November 29, 1982. In this opinion, the ALJ stated that he had "considered all of the evidence of record and can find no impairment of severity which would preclude the claimant from doing any type of work that he has ever done in the past." With respect to the evidence of Look's headaches, the ALJ stated: "The claimant has some discomfort from headaches, which have not limited his activities significantly, according to the evidence of record." The ALJ responded to Look's complaints of disabling pain as follows:

> The undersigned recognizes that the claimant experiences some degree of pain and discomfort. However, mild to moderate pain is not, in itself, incompatible with the performance of sustained work activity. It is true that pain is a subjective matter and that direct medical evidence of a cause and effect relationship between a specific physical impairment

and a claimant's subjective pain is not required. However, insufficiency of objective findings simply means that the particulars of the claimant's subjective complaints and the credibility thereof must bear a greater share of the burden of persuasion. In this case, neither the objective medical evidence nor the testimony of the claimant—although carefully considered—establishes that ability to function is so severely impaired by pain as to preclude work at levels of exertion elsewhere herein indicated to be within the claimant's capacity.

Presumably referring to Dr. Kahn's report, the ALJ noted that: "The evidence fails to indicate any restriction in motion or neurological abnormalities. The x-rays do not show any significant changes at all." While the ALJ's opinion summarized the testimony of Look and alluded to the fact that Barby had testified at the hearing, it did not specifically mention the medical reports of Dr. Docter.

The ALJ's decision became the final decision of the Secretary on March 19, 1983, when the Appeals Council of SSA denied Look's request for review of the ALJ's decision. On May 17, 1983, Look commenced the present action in federal district court under 42 U.S.C. § 405(g) (1982) to obtain judicial review of the Secretary's decision. The district court entered an order affirming the Secretary's decision on February 22, 1984. After summarizing and quoting from the hearing record developed before the ALJ, including Dr. Docter's reports, the district court concluded that: "This case represents a classic example of conflicting medical reports, together with testimony of a claimant which is not readily accepted by the ALJ." While noting Look's claims of severe pain, the district court stated: "As previously indicated, however, the ALJ did not accept the severity of that pain to which the plaintiff and his friend [Barby] testified. It is within the ability of the trier of fact to reject credibility and to make the determination that the claimant has no impairment of severity whatsoever."

Look now appeals the district court's decision.

## II.

This court has consistently held that an ALJ must offer some minimal level of articulation of his assessment of the evidence when the claimant provides considerable evidence to counter the agency's position. *See, e.g., Rousey v. Heckler,* 771 F.2d 1065, 1069 (7th Cir.1985); *Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir.1985); *Zalewski v. Heckler,* 760 F.2d 160, 166 (7th Cir.1985); *Halvorsen v. Heckler,* 743 F.2d 1221, 1226 (7th Cir.1984); *Garfield v. Schweiker,* 732 F.2d 605, 609 (7th Cir.1984); *Zblewski v. Schweiker,* 732 F.2d 75, 78–79 (7th Cir. 1984). Notwithstanding any question concerning the precise extent to which ALJs must discuss conflicting evidence in their opinions in order to facilitate our review of their disability determinations, *compare Stephens v. Heckler,* 766 F.2d at 287–88 (majority opinion) *with id.* 291–92 (Flaum, J., concurring), it is beyond dispute that: "This court insists that the finder of fact explain why he rejects uncontradicted evidence." *Id.* at 287. The ALJ in this case completely failed to explain his reasons for rejecting the uncontradicted evidence that Look suffered from severe and possibly disabling headache pain.

■ Our prior description of the evidence adduced at the hearing and the ALJ's opinion largely speaks for itself in demonstrating the inadequacy of the ALJ's stated rationale for rejecting Look's disability claim. If believed, Look's and Barby's hearing testimony, along with Dr. Docter's medical reports, establish that Look suffered from very severe, temporarily immobilizing, vascular cluster headaches. The report of Dr. Kahn, while perhaps undercutting Look's complaints of disabling back problems, says nothing to contradict Dr. Docter's report concerning Look's headaches. The medical reports therefore are not conflicting on the subject of these headaches. In the face of this evidence, the ALJ merely asserts that "mild to moderate pain is not, in itself, incompatible with the performance of sustained work activity."

■ Recognizing that, as the Secretary's counsel admitted in oral argument before this court, the ALJ's opinion is not a "model of clarity," the Secretary has offered several grounds for affirming the ALJ's determination beyond those that are explicitly stated in the ALJ's decision. The Secretary's primary contention is that we should affirm on the ground that the ALJ found the testimony and reports concerning Look's headaches to be incredible. The Secretary stresses that both Look and Barby were not disinterested witnesses, and that even Dr. Docter might have been considered biased in favor of Look because of Dr. Docter's lengthy social relationship with Look's family. The obvious problem with this line of argument is that the ALJ failed to make an express credibility finding concerning any of the evidence supporting Look's disability claim. While we cannot, sitting as an appellate court, affirmatively determine that this evidence was credible, *see Halvorsen v. Heckler,* 743 F.2d at 1226, neither can we presume that the ALJ disbelieved all of this evidence without any explicit findings to that effect. In sum, "[w]hile we must defer to the credibility determinations of the fact-finder," as the district court emphasized below, "we must be sure that the ALJ has indeed made a credibility determination." *Zblewski v. Schweiker,* 732 F.2d at 78.

■ The ALJ's opinion also may be read to conclude that, even crediting the evidence concerning Look's headaches, the headaches were not so severe as to prevent him either from doing the work he had done in the past or from performing any other kind of substantial gainful activity.[1]

---

1. The ALJ's opinion seems to indicate that he found Look not to be disabled because he did not suffer from a "severe" impairment. Thus, the ALJ's determination appears to have been made on the second step of SSA's regulatory test for disability. SSA's regulations prescribe a sequential inquiry to be followed in determining whether a claimant is disabled. The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's

The reasoning provided in the ALJ's opinion, however, is also inadequate to support this determination. Because of the severity, frequency, and unpredictability of Look's headaches as described in the hearing testimony and Dr. Docter's reports, the record fails to demonstrate clearly that these headaches would not preclude Look from working. Moreover, the evidence is ambiguous about the extent to which Look's headaches can be controlled through medication. Nevertheless, the ALJ's opinion does not explain in concrete terms why these headaches would not disable Look from performing particular kinds of jobs. While the ALJ might have had perfectly sound reasons for concluding that these headaches were not disabling, this conclusion is not so evident on the record in this case that we can reach it ourselves without further analysis by the ALJ. *See Zblewski,* 732 F.2d at 78.

### III.

The judgment of the district court is accordingly reversed with instructions to remand the case to the Secretary for further proceedings consistent with this opinion.