**Jesse WATSON, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. L 87–6.**

United States District Court, N.D. Indiana, South Bend Division.

Oct. 22, 1987.

Ralph L. Robinson, Lafayette, Ind., for plaintiff.

David H. Miller, Asst. U.S. Atty., Fort Wayne, Ind., for defendant.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This matter is before the court on cross-motions for summary judgment. The underlying action is for judicial review of a partially adverse final decision of the Secretary which determined that the onset of the plaintiff's disability for purposes of Social Security benefits was March 19, 1986, and not before.

The plaintiff filed his application for benefits on August 9, 1985, alleging that he became disabled on May 27, 1985. His application was denied initially and on reconsideration. A hearing was held on March 4, 1986, at which the plaintiff was represented by counsel. The plaintiff's daughter and a medical advisor hired by

the administration also testified. In a decision dated July 25, 1986, the Administrative Law Judge (ALJ) concluded that the plaintiff had been under a disability since March 19, 1986, but that prior thereto he had a residual functional capacity for light work. This decision became the final decision of the Secretary by affirmance of the Appeals Council on November 25, 1986. The plaintiff filed a complaint for judicial review pursuant to 42 U.S.C. § 405(g) on January 21, 1987. On July 30th and 31st the plaintiff and the defendant respectively filed motions for summary judgment, with each motion support by a memorandum. The matter, is therefore, ripe for ruling.

In his July 25th decision, the ALJ made the following findings:

1. The claimant met the disability insured status requirements of the Act on May 27, 1985, the date the claimant stated he became unable to work, and continues to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since May 27, 1985.

3. The medical evidence establishes that the claimant has arteriosclerotic heart disease with angina.

4. Prior to March 19, 1986, the claimant had the residual functional capacity to perform light work (20 CFR 404.1545, 404.1567, 416.945 and 416.967).

5. The claimant is fifty years old, which is defined as a person closely approaching advanced age (20 CFR 404.1563 and 416.963).

6. The claimant has an eighth grade education (20 CFR 404.1564 and 416.964).

7. In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material.

8. Section 404.1569 of Regulations No. 4 and Section 416.969 of Regulations No. 16 and Rule 202.10, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that the claimant considering his residual functional capacity, age, education and work experience, was not disabled prior to March 19, 1986.

9. Since March 19, 1986, but not prior thereto, the severity of the claimant's impairment has met the requirements of Section 4.04(B)(7)(b), Appendix 1, Subpart P, Regulations No. 4 (20 CFR 404.1525 and 416.925).

10. Although there is a possibility that surgery may restore the claimant's ability to engage in substantial gainful activity, Social Security Ruling 82–52 indicates that this does not preclude a finding of disability because the claimant is disabled and is expected to be disabled for the next 12 months.

11. The claimant has been under a "disability," as defined in the Social Security Act, since March 19, 1986, but not prior thereto (20 CFR 404.1520(d), (e) and (f), and 416.920(d), (e) and (f).

Findings numbered 4, 8, 9, and 11 are in dispute, insofar as they relate to finding an onset date of March 19th, and a capacity for light work prior to that date.

## I.

The basic issue before the court is whether substantial evidence supports the Secretary's final decision, in this case that of the ALJ. This determination is to be made viewing the record as a whole. *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982); *Schmoll v. Harris*, 636 F.2d 1146, 1149–50 (7th Cir.1980); *Carver v. Harris*, 634 F.2d 363, 364 (7th Cir.1980). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.; Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). The required evidence has been described as "more than a scintilla", *Richardson* at 401, 91 S.Ct. at 1427, but it may be "something less than the weight of the evidence." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); *Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir.1986).

The court's review is limited to determining whether the ALJ considered all relevant evidence, whether his resolution of

conflicting factual matters was support supported by substantial evidence, and whether the Secretary followed the law in reaching its conclusions. See *Delgado v. Bowen,* 782 F.2d 79, 82–83 (7th Cir.1986); *Zalewski v. Heckler,* 760 F.2d 160, 161–63 (7th Cir.1985); see also *Cullotta v. Bowen,* 662 F.Supp. 1161 (N.D.Ill.1987). The Court may not decide facts anew, reweigh evidence or substitute its own judgment. *Burnett v. Bowen,* 830 F.2d 731, 734 (7th Cir.1987); *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986); *Williams v. Bowen,* 663 F.Supp. 45, 48 (N.D.Ind.1987). If the Secretary's findings are supported by substantial evidence the court must affirm unless there has been an error of law. *Burnett* at 734; *Waite v. Bowen,* 819 F.2d 1356, 1360 (7th Cir.1987).

■ Often critical in resolving the issue of substantial evidence in a Social Security disability case, is a consideration of the manner in which the ALJ addressed and assessed the medical evidence of record. Although the court does not reweigh evidence, there are legal principles and guidelines which the ALJ must follow in his or her assessment of medical evidence. Typically the development of such principles has involved an expectation that, in weighing the evidence, the ALJ will have taken into account such factors as the relationship of the medical expert to the plaintiff, as well as the qualifications and potential biases of the person providing medical evidence.

It has been stated, for example, that an ALJ must weigh all evidence and may not ignore evidence that suggests an opposite conclusion. *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir.1982); *Garcia v. Califano,* 463 F.Supp. 1098, 1105 (N.D.Ill. 1979); *Rayborn v. Weinberger,* 398 F.Supp. 1303, 1311 (N.D.Ind.1975). This does not mean, of course, that the ALJ must provide a written evaluation of every piece of testimony and submitted evidence, *Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir.1985), but he or she must articulate, at some minimum level, significant evidence that is offered to counter the agency's position. *Burnett v. Bowen,* 830 F.2d 731, 735

(7th Cir.1987). See also, *Orlando v. Heckler,* 776 F.2d 209, 213 (7th Cir.1985); *Look v. Heckler,* 775 F.2d 192, 195 (7th Cir.1985); *Zalewski v. Heckler,* 760 F.2d 160, 166 (7th Cir.1985); *Halvorsen v. Heckler,* 743 F.2d 1221, 1226 (8th Cir.1984); *Garfield v. Schweiker,* 732 F.2d 605, 609 (7th Cir.1984); *Zblewski v. Schweiker,* 732 F.2d 75 (7th Cir.1984).

■ The ALJ is additionally required to explain why he or she rejects uncontradicted evidence. *Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir.1985); *Look v. Heckler,* 775 F.2d 192, 195 (7th Cir.1985). See also *Garfield v. Schweiker,* 732 F.2d 605, 609–10 (7th Cir.1984); *Zblewski v. Schweiker,* 732 F.2d 75, 78–79 (7th Cir.1984); *McNeil v. Califano,* 614 F.2d 142, 144–45 (7th Cir.1980). Finally, relevant medical evidence is to be considered, not in isolation, but with reference to the record as a whole. *Halvorsen v. Heckler,* 743 F.2d 1221, 1225 (7th Cir.1984). "There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period." *Id.,* citing *Stark v. Weinberger,* 497 F.2d 1092, 1098 (7th Cir. 1974).

Considerable case law has developed over the past few years relating to the value that is to be given to the opinion of a treating physician. In earlier cases, great deference was accorded such opinions which could be disregarded only if there existed persuasive contradictory evidence. See, e.g. *Evans v. Heckler,* 734 F.2d 1012 (7th Cir.1984). Even so, the mere fact that a physician happened to be a treating physician did not, in and of itself, entitle the evidence to be considered of controlling weight. *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir.1982) (citing *Cummins v. Schweiker,* 670 F.2d 81 (7th Cir.1982)). It was stated, however, that where a treating physician's evidence was found credible, it should be given controlling weight absent evidence to the contrary, because of greater familiarity with conditions and circumstances. *Whitney,* 695 F.2d 784, 789.

These concepts have been refined in more recent cases. In *Stephens v. Heck-*

*ler,* 766 F.2d 284 (7th Cir.1985), it was clarified that where experience backed by observation is set against the speculative statement of a consulting physician, substantial evidence lies on the side of the treating physician. *Id.* at 288. *Garrison v. Heckler,* 765 F.2d 710 (7th Cir.1985) held that preference for the opinion of a treating physician will apply only where the ability to observe over a period of time is essential to an accurate understanding of the plaintiff's condition. *Id.* at 715. Correspondingly, if an impairment lends itself to objective, precise evaluation, the opinion of a specialist consultant might in some circumstances be viewed as more persuasive than that of a treating generalist. The court noted in *Garrison,* that certain tensions could be seen to exist between *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), which favored a consulting physician's report, and our Seventh Circuit cases such as *Whitney* and *Allen.* In resolving that tension, the court added the principle that when a consulting physician adds new information or perspectives, the evidence may be considered substantial. *Garrison,* 765 F.2d at 713. In *Garrison,* only the agency's non-examining, consulting physicians had provided information as to specific limitations on the plaintiff's physical capacities.

Throughout the development of these principles the law is clear that an ALJ need not defer to the opinion of a treating physician if the physician's conclusion as to disability is not supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.936; see e.g., *Williams v. Bowen,* 663 F.Supp. 45, 49 (N.D.Ind.1987).

■ To be inferred from these principles, where a treating physician's opinion is supported by medically acceptable diagnostic techniques, where there is no hint of bias or a lack of credibility on his or her part, nor any finding thereof, where agency consultants do not add new information or perspective, where long-term involvement and familiarity are beneficial to a proper awareness of the plaintiff's condition, and where consultant evidence is speculative or

tentative, certainly a treating physician's medical input is to be accorded considerable weight.

## II.

In his decision dated July 25, 1986, ALJ Walsman acknowledged that the plaintiff was at that time fifty-two years old, had an eighth grade education, and had worked as a steel worker, which required continuous standing and walking, constant bending, frequent reaching, and lifting of over 100 pounds.

It is further clear from the evidence reviewed by the ALJ that the plaintiff suffered a heart attack on May 27, 1985, and was hospitalized at that time, and later for surgery. Cardiac catheterization then showed an 85–90% blockage of the proximal lateral anterior descending artery of the heart, which was more than sufficient to meet the 70% requirement specified in § 4.04(B)(7)(b) of the Listing of Impairments. Surgery on June 17, 1985, temporarily reduced stenosis to 20–30%. On July 29, 1985, the plaintiff attempted to return to work, but was unable to continue due to chest pain. He quit his work on August 1, 1985, and did not return, as advised by his doctor. The ALJ acknowledged in his report that the plaintiff continued to suffer from chest pain, and that his daughter testified that walking caused her father to get red-faced, out of breath, and to suffer from chest pain. The decision also acknowledged that the plaintiff's surgery was effective only for a short period of time.

The medical evidence recognized by the ALJ indicated that Dr. Kuipers, a cardiologist, who was the plaintiff's treating consultant at the time of his surgery, found excellent results a few days thereafter. On August 5, 1985, Dr. Kuipers noted a normal resting electrocardiogram and a sub-maximal treadmill test which produced no pain, ST segment change, or T-wave change. He did note the development of chest pain, but believed that it was "probably" not from the plaintiff's coronary artery disease.

The ALJ's decision indicated that Drs. Estes and Marciniak, two non-examining

agency consultants, in reports dated respectively September 16, 1985, and November 4, 1985, on the information then available, found a residual functional capacity for at least light work which would not subject the plaintiff to temperature extremes. Also recognized by the ALJ was a capacity assessment done by the plaintiff's doctor, Dr. Stolz, which was dated February 24, 1986. Dr. Stolz found a capability of sitting six hours, standing three hours, and lifting a maximum of five pounds frequently and ten pounds occasionally.

From the same report, the ALJ failed to mention, however, that in Dr. Stolz' view, the plaintiff should be restricted completely from walking, should sit no more than 4 hours at a time, and should stand no more than 2 hours at a time. He also restricted the plaintiff totally from any pushing and pulling of legs and arms, and from squatting, crawling, and climbing. All of this information was omitted from the ALJ's decision.

Less than a month after Dr. Stolz' evaluation, the plaintiff underwent another cardiac catheterization on March 19, 1986. The ALJ reported that "[t]his test revealed that the claimant suffered from a 70 percent proximal and mid-arterial lateral anterior descending stenosis with an aneurysm line between the stenoses ... [as well as] a hemodynamically insignificant stenosis in the obtuse marginal right coronary artery system." When the agency's medical advisor was informed of these results, he responded that this finding explained the plaintiff's chest pain and met the requirements for the Listing of Impairments. He added, though, that "in any event, the date the new evidence meets the Listing 4.04(B)(7)(b) is March 19, 1986."

From this statement the ALJ concluded that

... the claimant was not disabled *until* March 19, 1986, when his condition became severe enough to meet the requirements specified in ... the Listing of Impairments. (emphasis added)

Then, "... [c]onsidering the exertional limitations which have been advised and the claimant's statements regarding his symptoms and activities, ..." the ALJ specifically found that "... Prior to March 19, 1986, the claimant had the residual functional capacity to perform light work...."

### III.

In reaching his decision the ALJ in this case considered the following factors in sequence as required by Social Security Regulations:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 CFR 404.1520(b) and 416.920(b));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 CFR 404.1520(c) and 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 CFR 404.-1520(d) and 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled," must be made (20 CFR 404.1520(e) and 416.-920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 CFR 404.1520(f) and 416.-920(f)).

With respect to the plaintiff's disability from March 19, 1986, the ALJ found disability at step 3, since a 70% stenosis met the requirement of the Listing. With respect to the time period from May 27, 1985, through March 18, 1986, the ALJ proceeded to step 5. It is generally acknowledged by the ALJ, although not expressly found, that at no time in the interim period could the plaintiff perform his prior work. This fact is also implicit in

having decided the case at step 5 instead of at step four of the procedure. Once a claimant has shown the inability to perform past work, the burden shifts to the Secretary to show the ability to engage in some other type of substantial gainful employment. *Bauzo v. Bowen,* 803 F.2d 917, 923 (7th Cir.1986); *Tom v. Heckler,* 779 F.2d 1250, 1252–53 (7th Cir.1985); *Halvorsen v. Heckler,* 743 F.2d 1221, 1225 (7th Cir.1984). Based on the record as a whole, it is clear that the Secretary would view the plaintiff as *per se* disabled from May 27, 1985, until his surgery on June 17, 1985. It would appear, then, that it is the Secretary's position, that from June 18, 1985 (the day after the plaintiff's surgery) through March 18, 1986 (the day before tests again showed the plaintiff to be *per se* disabled), the plaintiff was capable of light work. Such a position is difficult. From a practical standpoint the plaintiff was not even allowed a trial work period until July 29th, and that attempt clearly failed due to severe chest pains on August 1st. For purposes of analysis the court will view the interim period as a whole, beginning at some point after the plaintiff's surgery and ending with the March 19th catheterization. The more precise issue in this case is whether substantial evidence supports the conclusion that the plaintiff was capable of light work in the interim period.

Light work is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, a person must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b). *Nelson v. Secretary of Health and Human Services,* 770 F.2d 682, 684 (7th Cir. 1985).

■ The Secretary argues that a letter from the plaintiff's surgeon, Dr. Kuipers, to the plaintiff's physician, Dr. Stolz, dated some four days after surgery, is supportive of its position. This letter states: "We are hopeful he will receive a long term excellent result." This statement is obviously speculative, and cannot reasonably be interpreted otherwise. In any event the statement does not reasonably support a capacity for light work.

■ The Secretary then points to August 5, 1985, results from tests conducted by Dr. Kuipers. Resting EKG tracings and a sub-maximal stress test produced the conclusion that the pain reported by the plaintiff was "probably not on the basis of his coronary disease." This statement was made in an August 5th correspondence, only six weeks after surgery, and is likewise speculative. Dr. Kuipers made no determination as to the plaintiff's capacity for work, other than to have released him to return to his former job on July 29, 1985. It is undisputed that the plaintiff's pain forced him to leave that position on August 1, 1985.

It was at this stage in the development of the record that non-examining agency consultants determined that the plaintiff had a capacity for at least light work, limited by the avoidance of temperature extremes. The defendant, citing *Garrison,* argues that the ALJ was entitled to rely on this opinion over that of the plaintiff's treating physician, because the consultant opinion provided information about the performance of specific exertional activities in a work environment. This court disagrees with the defendant's reading of *Garrison.* To the extent that *Garrison* applies to this case, it is supportive of the plaintiff's position.

In *Garrison* the court held that preference for a treating physician will apply where observation over a period of time is essential to understanding. In that case the plaintiff's complaints of pain were found not credible. In this case there is no such evidence and no such finding. Throughout the record is evidence of credible pain in the form of plaintiff's statements, the testimony of the plaintiff's daughter, and doctor notations. This pain is substantiated retroactively by the March

19, 1986, catheterization which showed stenosis that met the Listing of Impairments. Even the medical expert hired by the administration stated that the March 19th test explained the plaintiff's pain. Unlike in *Garrison* there is no basis in this record upon which to play down or minimize the effects of the plaintiff's pain on his capacity for work.

Furthermore, in *Garrison,* the plaintiff's physician provided no report on specific exertional limitations. In this case Dr. Stolz submitted a detailed physical capacities assessment, which the ALJ recognized only in part. This report clearly indicated that the plaintiff was incapable of light work. The correctness of this opinion was buttressed by the catheterization only a few weeks later which showed the plaintiff to be *per se* disabled. In *Garrison* the plaintiff did not meet the Listing. This plaintiff did. To isolate the application of the March 19, 1986, test to that date and forward, is contrary to the evidence and to reason. There is likewise no basis to disbelieve the physical capacities evaluation of Dr. Stolz, and every reason to credit it over the opinion of the non-examining consultant physicians. There is no basis in the law of this circuit, nor in reason, to view the evidence otherwise, particularly in light of the March 19th catheterization.

The defendant argued that the testimony of Dr. Surawicz discounted the opinion of Dr. Stolz. That argument is without merit for two reasons. First, Dr. Surawicz did not, at the time of the hearing, have benefit of the March 19th catheterization, which clearly supported Dr. Stolz' assessment. Second, the statements made by Dr. Surawicz were at best supportive of the treating physician's views, and at worst, were lessons in evasion. When pressed to comment on Dr. Stolz' evaluation, Dr. Surawicz stated: "I don't know what this is based on. The doctors who take care of him, they know much more than I do because my opinion is strictly based on the records alone." Although the law determines guidelines for crediting the views of one doctor over another, this testimony is not such that a reasonable person could possibly view it as discrediting the input of Dr.

Stolz. At more than one point in the hearing, Dr. Surawicz skillfully evaded any question where the answer might go against the position of the Secretary. This evasion was also present when the ALJ gave Dr. Surawicz the opportunity to comment on the retroactive meaning of the March 19th catheterization, and to provide a physical capacities assessment. The assessment apparently was returned without comment, and the response was simply to state that the official date of *per se* disability was, in fact, March 19th. This evasive, ambiguous statement cannot reasonably be interpreted as supportive of the ALJ's conclusions as to the onset date or as to a capacity for light work.

The court notes that attached to the plaintiff's memorandum is a letter dated July 14, 1986, from Dr. Stolz to the plaintiff's attorney which states:

> The original anigogram on 6/4/85 showed an 85% stenosis of the LAD that was transiently reduced to 20–30% of obstruction with the angioplasty. However, the patient's symptoms recurred within a very short time and subsequent angiography on 3/20/86 confirmed a 70% restenosis of the LAD. Therefore, this patient has been disabled with coronary insufficiency since its onset in May 1985.

This letter was apparently submitted to the ALJ a few days later, but was not accepted or made part of the evidence considered in the July 25th decision. The court considers this letter relevant and non-cumulative, but non-essential to its decision. It has not been considered in this opinion, and therefore the effects of excluding it will not be discussed.

The court finds that on this record, the ALJ erred as a matter of law in finding a capacity for light work during the interim period. Such a finding is not supported by substantial evidence, is contrary to the evidence, and is not supported by the case law of this circuit.

Arguably, the record would support a finding that the plaintiff was capable of sedentary work during the interim period. However, application of the Grid for a per-

son of Mr. Watson's age, education, and previous work experience would dictate a finding of disabled. 20 C.F.R. Ch. III, Pt. 404, Subpt. P, Appendix 2, Rule 201.09.

The remaining matter to be resolved is the appropriate disposition of this case. A remand is appropriate upon good cause by the Secretary, upon the necessity of considering new evidence where the plaintiff has shown good cause, and where the findings of the Secretary are not supported by substantial evidence but do not provide sufficient evidence to support a reversal and finding of disability. *Garfield v. Schweiker,* 732 F.2d 605, 610, n. 8 (7th Cir.1984); *Bauzo v. Bowen,* 803 F.2d 917, 926–27 (7th Cir.1986). In this case, the Secretary's final decision is not supported by substantial evidence and the record does support a reversal and finding of disability. There is no dispute as to any material fact, and Mr. Watson is entitled to judgment as a matter of law. See, *Pearson v. Bowen,* 648 F.Supp. 782 (N.D.Ill.1986). If there were any determination left open to be decided, remand for further consideration would be the appropriate disposition. *Id.* at 793–94; *Johnson v. Heckler,* 741 F.2d 948 (7th Cir. 1984).

In a case such as this one, however, where the plaintiff has met his burden of proof at step four, and the Secretary's determination cannot be affirmed, the choice between a remand to the Secretary and an award of benefits is within the discretion of the court. *Bell v. Bowen,* 658 F.Supp. 533 (N.D.Ill.1987) (citing *Dixon v. Heckler,* 811 F.2d 506, 511 (10th Cir.1987) and *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir.1984). Moreover,

> "An award of benefits is appropriate when substantial evidence on the record as a whole indicates that the claimant is disabled, and the weight of the evidence indicates that a remand would only delay the receipt of benefits while serving no useful purpose."

*Bell,* 658 F.Supp. at 538, (citing *Podedworny,* 845 F.2d at 222; *Parsons v. Heckler,* 739 F.2d 1334, 1341 (8th Cir.1984); *Tennant v. Schweiker,* 682 F.2d 707, 710 (8th Cir.1982)).

The record contains substantial evidence to support the plaintiff's alleged date of onset as being May 27, 1985. The record lacks substantial evidence to support the defendant's finding of a capacity for light work in the interim period.

Therefore, the defendant's motion for summary judgment is DENIED, and the plaintiff's motion is GRANTED. The final decision of the Secretary is REVERSED, and the case is REMANDED for an award of benefits from May 27, 1985. SO ORDERED.