Carolyn C. CRIST, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant.

Civ. No. L 87–68.

United States District Court,
N.D. Indiana,
Hammond Division at Lafayette.

March 23, 1988.

Margret G. Robb, Lafayette, Ind., for plaintiff.

David H. Miller, Asst. U.S. Atty., Fort Wayne, Ind., for defendant.

MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This is an action related to those provisions of the Social Security Act which provide for establishment of a period of disability and payment of disability insurance

benefits where the requirements specified therein have been met. 42 U.S.C. §§ 416(i) and 423. The jurisdiction of this court to review the final decision of the Secretary is stated at 42 U.S.C. § 405(g).

The plaintiff filed application for benefits on December 9, 1985, alleging an onset date of April 15, 1983. Her application was denied both initially and on her request for reconsideration. On September 15, 1986, a hearing was held before Administrative Law Judge (ALJ) Castelli, who issued his decision on October 28, 1986, finding specifically as follows:

1. The claimant met the disability insured status requirements of the Act on April 15, 1983, the date the claimant stated she became unable to work, and continues to meet them December 31, 1988.

2. The claimant has not engaged in substantial gainful activity since April 15, 1983.

3. The medical evidence establishes that the claimant has severe back pain and asthma, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's subjective complaints with regard to pain and restricted or limited daily activities are not supported by the objective medical evidence or by her pain regimen and despite her subjective complaints, she retains the residual functional capacity to perform at least sedentary work activity.

5. The claimant has the residual functional capacity to perform the physical exertion and non-exertional requirements of work except for walking or standing for extended periods of time, lifting or carrying more than 10 pounds, working in an environment where she would be subject to excessive dust, fumes, air pollutants and other lung irritants, and necessity to alternately sit or stand as she desires for comfort (20 CFR 404.1545 and 416.945).

6. The claimant is unable to perform her past relevant work as department head who was required to stock shelves but in all probability could perform similar types of work she did in the past as a cashier.

7. The claimant's residual functional capacity for the full range of sedentary work is reduced by walking or standing for extended periods of time, lifting or carrying more than 10 pounds, working in an environment where she would be subject to excessive dust, fumes, air pollutants and other lung irritants, and necessity to alternately sit or stand as she desires for comfort.

8. The claimant is 48 years old, which is defined as younger individual (20 CFR 404.1563 and 416.963).

9. The claimant has a high school education (20 CFR 404.1564 and 416.-964).

10. The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work activities of other work (20 CFR 404.1568 and 416.968).

11. Based on an exertional capacity for sedentary, and the claimant's age, education, and work experience, Section 404.1569 of Regulations No. 4 and 416.969 of Regulations No. 16, and Rule 201.21, Table No. 1, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

12. Although the claimant's additional non-exertional limitations do not allow her to perform the full range of sedentary work, using the above-cited rule as a framework for decision-making, there are a significant number of jobs in the national economy which she could perform. Examples of such jobs are: cashier in a department store.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the

date of this decision (20 CFR 404.-1520(f) and 416.920(f)).

The plaintiff requested review by the Appeals Council. Upon denial, the decision of the ALJ became the final decision of the Secretary and appealable to this court. Both sides have filed motions for summary judgment and the issues have been fully briefed. Therefore, the matter is ripe for ruling.

## I.

Where the ALJ's findings and conclusion have been affirmed as the final decision of the Secretary, the ALJ's opinion as to disability must be upheld if it is supported by substantial evidence on the record as a whole. *Walker v. Bowen,* 834 F.2d 635 (7th Cir.1987); *Smith v. Schweiker,* 735 F.2d 267, 270 (7th Cir.1984), taking into account "whatever in the record fairly detracts from its weight." *Sears v. Bowen,* 840 F.2d 394 (7th Cir.1988), quoting *Bauzo v. Bowen,* 803 F.2d 917, 923 (7th Cir.1986).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Sears v. Bowen,* 840 F.2d 394, 397–98 (7th Cir.1988); *Bauzo v. Bowen,* 803 F.2d 917, 912 (7th Cir.1986). Although substantial evidence means more than a "mere scintilla", *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427, it is "something less than the weight of the evidence." *Delgado v. Bowen,* 782 F.2d 79 (7th Cir. 1986), quoting *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026–27, 16 L.Ed.2d 131 (1966).

The specific issue here is whether the ALJ properly used the Grid to determine that the plaintiff retained the residual functional capacity (RFC) for past work as a cashier or for other sedentary work despite exertional and non-exertional limitations. The overriding issue, however, is whether substantial evidence supports the ALJ's finding of a capacity for any sedentary work on a sustained basis. For the rea-sons set forth below, this court finds against the Secretary and for the plaintiff.

## II.

In determining whether or not a claimant is disabled, the Secretary has adopted a five-step sequential evaluation process, which has been summarized as the following inquiry: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work in the national economy? An affirmative answer leads either to the next step, or on steps (3) and (5) to a finding that the claimant is disabled. A negative answer at any point other than at step (3) will lead to a finding that the claimant is not disabled. 20 C.F.R. § 404.1520; *Veal v. Bowen,* 833 F.2d 693, 695 n. 2 (7th Cir. 1987).

The first, second, and third steps of the analysis are not at issue here. Having determined that the claimant did not engage in "substantial gainful activity" (SGA) since the alleged onset date, the ALJ appropriately skipped over step two due to the status of the law at that time. In his findings, however, he acknowledged that the plaintiff's back pain and asthma were considered severe. Because he did not find that the plaintiff's condition met or equaled the listing of impairments, the ALJ progressed to a consideration of the plaintiff's residual functional capacity (RFC) for engaging in basic work activities. He concluded that Mrs. Crist retained a capacity,

> ... to perform physical exertion and non-exertional requirements of work except for walking or standing for extended periods of time, lifting or carrying more than 10 pounds, working in an environment where she would be subject to excessive dust, fumes, air pollutants and other lung irritants, and necessity to alternately sit or stand as she desires for comfort.

Although the ALJ recognized medical evidence and subjective complaints which re-

flected that Mrs. Crist is unable to sit for extended periods of time, he did not specifically find this limitation. The omission is apparently explained in Finding Four, which concluded that the subjective complaints of pain and restricted activity were not supported by objective medical evidence or by her pain regimen. Despite the above rather lengthy list of limiting factors recognized by the ALJ, and subjective complaints not expressly found to be lacking in credibility, the ALJ concluded that the plaintiff "in all probability could perform similar types of work she did in the past as a cashier." At this point the ALJ appeared to have decided the case at step four. This court finds that the conclusions seemingly related to step four of the process were unsupported by substantial evidence, contrary to the evidence, and contrary to law.

At level four of the sequential analysis, the burden of proof remains with the plaintiff. *See, e.g., Sears v. Bowen,* 840 F.2d 394 (7th Cir.1988). Mrs. Crist, therefore, was required to present substantial evidence of being unable to return to her prior work.

The record indicates that the plaintiff was, at the time of her hearing, forty-eight years old, having been born on March 12, 1938. She testified that both her weight and height tend to fluctuate, due respectively to a thyroid problem and spine curvature. At the hearing the plaintiff stated that she was four feet three inches and weighed 138 pounds, but that she had lost about one inch in height each year over the last three years, and had weighed between 138 and 150 pounds since January of 1986.

The alleged weight and height changes are supported by the medical records of a series of treating and examining physicians. A June 6, 1983 report of Dr. Dyer, a chiropractor, registered a height of four feet, six inches. In a report by Dr. Henney dated November 10, 1985, Mrs. Crist was four feet, five inches tall. On January 29, 1986, the plaintiff was reported by Dr. Neal Clemenson to be four feet, four inches. The plaintiff claimed that her height, coupled with her severe back condition had been problematic in her prior

work, as well as in her daily activities. She stated that she can no longer drive, because if she attempts to stretch far enough to reach the pedals, her legs begin to quiver and she becomes a danger to herself and others.

Mrs. Crist also testified that her pain is such that she must wear especially loose clothing in order to dress herself, and that her husband must help her put on her shoes and socks. The plaintiff indicated that she cannot sit or stand for more than a few minutes without changing from one to the other, walking, or propping herself up in a bed. She cannot lie flat, or, for the most part do any bending or twisting. Mrs. Crist reported that her asthma had gone into bronchial pneumonia and becomes aggravated by weather changes, pollen, and fumes. A report from vocational rehabilitation indicated that the plaintiff is not a candidate for that program, since she cannot sit for a period long enough to be trained in a job.

Although the plaintiff is able to walk comfortably across a room, a block of walking will necessitate sitting down or lying down. Mrs. Crist stated that when her right side is numb, she loses the ability to write due to loss of grasp or grip in her right hand. She testified that in general her right arm is weak to a point that she cannot carry five pounds around the room. She no longer shops or carries groceries. At one time she attempted to carry eight dinner plates across the kitchen and found it necessary to go to bed from the strain.

The hearing further revealed that Mrs. Crist has a high school education and no training beyond that point. Her most recent employment before filing for disability was with the Shelsis Family Store. Her duties included waiting on customers as a sales clerk, stocking and cleaning shelves, ordering, moving merchandise from one place to another, and handling the cash register from time to time. Because the store was essentially a self-service arrangement, the bulk of her time was spent in taking inventory and stocking shelves. It was in this capacity that in 1983 she sustained injuries when boxes from an upper

shelf fell on her, at which time she quit working. Because the extent of her injury did not become apparent immediately, she failed to file a timely workmen's compensation claim. She did not file for disability until her husband later became disabled himself and could no longer work.

For two years prior to her employment with Shelsis, Mrs. Crist worked as a stock clerk in a factory. The job involved lifting and carrying of 25 to 35 pound packages. Prior to this position, the plaintiff worked as a department store clerk for K–Mart, and her duties were similar to those at Shelsis.

This record, as set forth above and more fully below, substantially supports an inability to return to prior work. The next question is whether there is any substantial evidence for the ALJ's tentative finding that Mrs. Crist is able to perform in prior relevant work as a cashier. See, *Veal v. Bowen*, 833 F.2d 693 (7th Cir.1987); *Lauer v. Bowen*, 818 F.2d 636, 638 (7th Cir.1987). This requires an analysis of whether the plaintiff retains the RFC to perform:

1. The actual functional demands in job duties of a particular past relevant job; or

2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

*Veal v. Bowen*, 835 F.2d 693, 697 (7th Cir.1987), quoting *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir.1985).

To effectively carry out an analysis of an RFC for prior work, the ALJ must compare the physical demands of the plaintiff's past relevant work with her present mental and physical capacity. *Veal v. Bowen*, 835 F.2d 693, 697 (7th Cir.1987), citing *Bauzo v. Bowen*, 803 F.2d 917, 925 (7th Cir.1986); *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir.1984). Moreover, the record must establish that the plaintiff is capable of performing past relevant work on a sustained basis. *Veal v. Bowen*, 835 F.2d 693, 697 (7th Cir.1987), citing *Rousey v. Heckler*, 771 F.2d 1065, 1070–71 (7th Cir.1985).

The medical evidence documents by x-ray reports that Mrs. Crist was diagnosed as having scoliosis of the dorsal spine as early as 1980. A 1982 report of Dr. J.C. Balvich indicated that the plaintiff was hospitalized at that time for asthmatic bronchitis. The report acknowledged hypothyroidism medicated with Synthroid. X-rays revealed "changes incident to previous granulomatous disease," and "distortion of the thoracic cage in association with a marked S-shaped scoliosis." An x-ray of the lumbo-sacral spine in August of 1983 showed "[s]ignificant thoracolumbar scoliosis with secondary degenerative change ...." A "secondary flattening of the lower thoracic and lumbar vertebral bodies" was present, as was "secondary degenerative change with marginal osteophytes and generalized loss of disc height, most prominent in the upper lumbar spine."

The plaintiff was again hospitalized on October 31, 1983. Her diagnosis upon discharge was severe bronchitic asthma and thyroid disease. The radiologist reported severe thoracolumbar scoliosis, with no acute process or significant change from April of 1982. On September 10, 1984, Mrs. Crist was once again admitted to the hospital for acute asthma and bronchitis. Although the plaintiff was never specifically hospitalized for her back, the tests taken during her hospital stays trace the degenerative nature of her back condition. In addition, she has seen several physicians for back treatment. Although the ALJ acknowledged hospitalizations for asthma in the spring of 1983, 1984, and 1985, as well as the fall of 1984, he made no mention of the earlier evidence of her back condition.

In reviewing the medical evidence, the ALJ stated that he considered the reports of Dr. John Shively, an orthopedic surgeon, Dr. Neal Clemenson, a family practitioner, and Dr. John Gossard, an additional treating physician, as a basis for being "convinced that the claimant has the residual functional capacity to perform at least sedentary work activity." Although the ALJ fairly reviewed the content of those specific reports, virtually nothing in any of them could reasonably be viewed as supportive of his findings of a capacity for prior work or for other sedentary work.

Dr. Shively opined specifically that the plaintiff would not be "able to do work at jobs requiring prolonged standing, sitting, stooping, lifting," and he elsewhere referred to a "limitation in ability to sit for long periods of time." Dr. Clemenson found "chronic low back pain which is probably on the basis of degenerative arthritis," with "some disc involvement because of the radicular symptoms in the right leg." He suspected she would always have some lower back pain which would be exaggerated by excessive activity. Dr. Gossard stated specifically that the plaintiff's activities "are certainly limited and she would not be able to do any job which required prolonged sitting, standing, walking, or lifting and pushing." Additionally, Dr. Peter Dyer, a chiropractor, expressed the view that the plaintiff's condition would preclude her from engaging in employment. The ALJ made no mention of this last viewpoint, but the inclusion of it is non-essential to this court's holding.

In the final analysis, the ALJ did not really decide the case at level four. In the narrative portion of his decision, the ALJ even acknowledged that the plaintiff could not perform her past relevant work. Despite a speculative finding related to former work as a cashier, the ALJ proceeded to step five, and cited cashiering as a possible work alternative. Having recognized a severe back disorder, the ALJ decided that notwithstanding acute attacks of asthma and subjective complaints including pain, the plaintiff would be capable of sedentary work, as long as she avoids walking or standing for extended periods of time, lifting or carrying more than 10 pounds, working in an environment where she would be subject to excessive dust, fumes, air pollutants and other lung irritants, and is able to alternately sit or stand as she desires for comfort. The ALJ then applied the Grid, taking administrative notice that with all the acknowledged limitations, there are a significant number of unskilled, sedentary jobs in the national economy which the plaintiff can perform. Such an application of the Grid on the facts is highly inappropriate.

The Grid is a chart that classifies a claimant as disabled or not disabled according to residual functional capacity (RFC) for work, age, education, and work experience. See, *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987); Appendix 2, Subpart P, Part 404, Chapter III, 20 C.F.R. §§ 200.00–204.00 (1987). In some cases the Grid alone will be considered sufficient substantial evidence to confirm the Secretary. *Walker* at 640, citing *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). However, where a claimant suffers from severe non-exertional impairments, including pain, the case may call for other evidence, such as input from a vocational expert, to determine the effects of the plaintiff's combined impairments on the job base. *Warmoth v. Bowen*, 798 F.2d 1109, 1112 (7th Cir.1986). See also *Kuwahara v. Bowen*, 677 F.Supp. 553 (N.D.Ill.1988). *Warmoth* specifically dealt with limitations imposed on the job base from environmental restrictions.

Although the use of the Grid is not always inappropriate where there are non-exertional impairments, *Nelson v. Secretary of Health and Human Services*, 770 F.2d 682, 684–685 (7th Cir.1985), there must be reliable evidence of some kind that would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available. *Warmoth v. Bowen*, 798 F.2d 1109, 1112 (7th Cir.1986). It strains reason beyond its limits to imagine this woman acting on a sustained basis as a department store clerk. The evidence is undisputed that she is no more than four feet, four inches and shrinking from curvature of the spine, and is prone to acute attacks of asthma which require periods of hospitalization. The ALJ's finding that her subjective complaints of pain and restricted activity are not supported by the objective medical evidence is clearly contrary to the evidence. As indicated above, the degenerating condition of the plaintiff's back is substantiated by x-rays which were interpreted by a variety of physicians whose credibility cannot realistically be questioned collectively.

■ Counsel for the defendant argues that the RFC assessments of non-examining DDS physicians provide substantial support for the finding of a capacity for sedentary work. The argument is without merit for at least two reasons: (1) the ALJ himself did not rely on, or even mention these reports, perhaps realizing that an RFC for light work could not be justified by the record; (2) the reports of two non-examining disability physicians will not suffice as substantial evidence as against several non-conflicting opinions of treating and examining physicians, where nothing in the record suggests that the examining physicians were lacking in credibility. See, *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir.1982). See also *Piercy v. Bowen*, 835 F.2d 190 (8th Cir.1987).

Defendant counsel speculates that the treating physicians might have been of doubtful credibility or were bending over backwards to support the claimant's application for benefits, citing *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir.1982). Again, this position is without foundation for two reasons: (1) the opinion of the ALJ makes no such suggestion, and (2) there is nothing in the record to indicate sinister motives on the part of the various doctors who treated the plaintiff.

It is true that the opinion of a treating physician will not in all cases be controlling. *Id.* However, when experience backed by observation is set against the speculative statement of a consulting physician, substantial evidence lies on the side of the treating physician. *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir.1985). In *Stephens* the opinion of examining physicians was conflicting, so the Secretary properly used the reports of consulting physicians to resolve the conflict. *Id.* Here, the reports of a number of examining physicians supported the plaintiff's complaints, and none of the reports were in conflict with each other. There was no evidence to support the conclusion of DDS consultants.

A consulting physician's opinion will also be substantial evidence where it adds new information or perspectives, such as great-er expertise with a particular ailment, greater impartiality, or a greater range of experience. *Garrison v. Heckler*, 765 F.2d 710, 713 (7th Cir.1985). This record indicates no special expertise on the part of the non-examining agency consultants, while among the plaintiff's treating physicians were more than one relevant specialist. Perhaps equally significant, the ALJ placed no apparent value on the agency determinations, having chosen not to refer to them in his decision.

An ALJ is at liberty to reject the opinion of a treating physician where the medical evidence does not support it, and where he or she has articulated reasons for the rejection. *Fox v. Heckler*, 776 F.2d 738 (7th Cir.1985). In this case the ALJ rejected the opinion of Dr. Shively because "other than [the plaintiff's] complaints of pain, he relates very few objective signs or findings supporting his conclusion." Dr. Shively, in fact, recited from physical examination that the plaintiff does not flex more than about 25% of normal for her back, and that on the basis of x-rays made that day (January 6, 1986), she had scoliosis in the lumbar region with "hypertrophic changes in the vertebrae ... and some degeneration in the facets of the lumbosacral level." As an orthopedic surgeon, it would seem that Dr. Shively would be more qualified to express an opinion as to the effects of such a condition, than the ALJ. Dr. Gossard, a second orthopedic doctor, examined the plaintiff's x-rays and concurred in the conclusion, stating that there existed a "left upper lumbar curve and a right low lumbar curve with accompanying osteophyte formation at the disc spaces." He opined that the degenerative changes in her back were most likely the cause of her pain, and he recommended that she lie down three or four times a day. These views were fully consistent with additional medical evidence in the form of earlier x-rays, confirming the deterioration of Mrs. Crist's back. Both Drs. Shively and Gossard opined that the condition of the plaintiff's back would not permit her to function in a job that required prolonged sitting, and standing.

Although the ALJ recognized and discussed the plaintiff's subjective complaints

related to pain and restricted activities, he dismissed the complaints as non-disabling for two reasons: (1) lack of objective medical support, and (2) his inferences from the plaintiff's pain regimen. The first of these bases has already been discussed as contrary to the evidence and contrary to law. At least one examining physician specifically opined that the curvature of the plaintiff's spine and accompanying degenerative changes were pain related. A series of x-rays supported this view.

Even with very little objective medical evidence directly supporting a disability, a claimant may prove disability within the meaning of the Social Security Act on the basis of subjective complaints by showing:

1) evidence of an objectively adduced abnormality *and, either* 2) objective medical evidence supporting the subjective complaints issuing from that abnormality, *or* 3) that the abnormality is of a nature in which it is reasonable to conclude that the subjective complaints are a result of that condition.

*Veal v. Bowen*, 833 F.2d 693, 698 (7th Cir.1987), citing *Sparks v. Bowen*, 807 F.2d 616, 618 (7th Cir.1986). See also, *Barge v. Secretary*, 676 F.Supp. 179, 183 (N.D.Ind. 1987). In this case the plaintiff has satisfied all three elements of proof.

To be sure, although objective evidence of pain must be considered by an ALJ in determining whether an individual is disabled, such evidence does not mandate a finding of disability, and in this respect the court may not substitute its judgment for that of the ALJ if substantial evidence supports his or her conclusion that the plaintiff's pain is not disabling. *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir.1987), citing *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir.1984). In this case, however, the record is lacking in any substantial evidence that the plaintiff's pain, especially when considered with other conditions, is not disabling.

To dismiss the plaintiff's complaints as non-disabling, the ALJ relied in large part on his interpretation of the plaintiff's pain regimen, which included the use of an inhaler three or four times a day as needed, and the use of Theo–Dur, in dosages of either 200 or 300 milligrams about twice a year in extreme emergencies when bronchial tubes would not otherwise open. Mrs. Crist described her use of Diazepam or Valium, as being once at bedtime on a daily basis in a dosage of five milligrams. When Extra–Strength Tylenol does not control her pain, the plaintiff uses Darvocet. The latter pain medication becomes necessary on an average of two or three times a week. Mrs. Crist testified that she refrains from using medications as much as possible, for fear of addiction and for fear that a particular medication will become ineffective, as happened in an earlier experience with Motrin.

■ This court has previously acknowledged that a claimant's kind and quantity of medication might be a valid consideration in evaluating subjective complaints related to pain in appropriate circumstances. See, *Kelsey v. Bowen*, 681 F.Supp. 595 (N.D.Ind.1988), citing *McNeil v. Califano*, 614 F.2d 142, 144–145 (7th Cir.1980). In this case, however, objective medical evidence fully supports subjective complaints related to pain and restricted activity. There is no evidence of, nor an express finding of, a lack of credibility. The ALJ's interpretation of the plaintiff's medication, standing alone, qualifies as no more than a "scintilla", on these facts, and does not constitute substantial evidence that the plaintiff's complaints, particularly considered with her various limitations, were non-disabling.

■ According to the ALJ the plaintiff's various problems could be resolved by her finding work which would allow alternating between sitting and standing. The record contains an abundance of evidence that Mrs. Crist cannot sit for more than short periods of time. In evaluating the evidence, the ALJ stated simply, that "[d]espite the conclusion reached by Dr. Shively, I feel that ... [the plaintiff] is capable of performing a sedentary job so long as she can intermittently stand." There is no substantial evidence to support this conclusion, a great deal of evidence to contradict it, and at least one circuit which has held that

the concept advocated by the ALJ is in direct conflict with the concept of sedentary work, which contemplates "substantial sitting as well as some standing and walking." *Wages v. Secretary of Health and Human Services*, 755 F.2d 495 (6th Cir. 1985).

*Wages* additionally noted that SSR 83–12 suggests that sedentary work generally involves sitting for six hours out of an eight-hour work day, citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984). *Ferraris* specifically held that alternating between sitting and standing may not be within the definition of sedentary work. Other courts have held that a claimant cannot perform sedentary work if he or she must alternate between sitting and standing. See *Wages* at 498–99 and cases cited therein.

The defendant refers to SSR 83–12 as appropriately guiding the ALJ to find that alternating between sitting and standing would allow the plaintiff to do sedentary work. In addition to the above cases, and others, which put limits on application of this non-binding rule, the ruling itself, when read in its entirety, provides no foundation for such a finding on these facts:

> In some disability claims, the medical facts lead to an assessment of [residual functional capacity] which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for a while before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy—typically professional and managerial ones—in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of transferring work skills to such jobs, he or she would not be found disabled. *However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.* In cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base. (Emphasis added). SSR 83–12; *Wages* at 498.

The ALJ made no reference to this regulation, nor to any other proposed basis for determining that the plaintiff could perform in an occupation which would allow alternating between sitting and standing. Moreover, the above regulation contemplates in the first paragraph, a person who has a capacity for either sedentary or light work but is incapable of prolonged sitting, standing or walking. Even the ALJ had to acknowledge a veritable list of limitations within the sedentary category. Finally, assuming the plaintiff could be seen to fit under paragraph one of SSR 83–12, she is clearly excluded from the proposed line of thinking by paragraph two. There was simply no basis in law or fact for the ALJ's related finding.

 The issue remaining is the proper disposition of this case. The Secretary urges that if substantial evidence is not found here to support the final administrative decision, the case should be remanded for further vocational assessment. On these facts the court does not agree. This plaintiff is now fifty years old, is shrinking from a severe, degenerative curvature of the spine, undoubtedly suffers from pain, is markedly restricted in movement, and is prone to acute attacks of asthma and bronchitis. With the exception of certain information not mentioned by the ALJ but contained in the evaluations of non-examining, government-hired physicians, and the ALJ's inferences related to the plaintiff's

medication, nothing in the record supports the Secretary. On the other hand the record does contain substantial evidence to support a finding of disability on the basis of the plaintiff's inability to sit, stand or walk for more than short periods and the necessity of lying down to rest several times a day, and a combination of impairments.

Remand is appropriate upon good cause shown by the Secretary, upon the necessity of considering new evidence where the plaintiff has shown good cause, and where the findings of the Secretary are not supported by substantial evidence but do not provide sufficient evidence to support a reversal and finding of disability. *Bauzo v. Bowen*, 803 F.2d 917, 926–27 (7th Cir. 1986); *Watson v. Bowen*, 671 F.Supp. 580, 588 (N.D.Ind.1987). None of these situations apply here.

Where as here, the plaintiff has met her burden at step four and the Secretary cannot be affirmed, a choice between a remand to the Secretary and an award of benefits is within the discretion of the court. *Bell v. Bowen*, 658 F.Supp. 533 (N.D.Ill.1987) (citing *Dixon v. Heckler*, 811 F.2d 506, 511 (10th Cir.1987), and *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir.1984). Moreover,

> [a]n award of benefits is appropriate when substantial evidence on the record as a whole indicates that the claimant is disabled, and the weight of the evidence indicates that a remand would only delay the receipt of benefits while serving no useful purpose.

*Bell*, 658 F.Supp. at 538, citing *Podedworny*, 845 F.2d at 222; *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir.1984); *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir.1982).

Accordingly, the Secretary's motion for summary judgment is DENIED, and the plaintiff's motion is GRANTED. The final decision of the Secretary is REVERSED, and the case is REMANDED for an award of benefits. IT IS SO ORDERED.