Willie GARRISON, Plaintiff-Appellant,

v.

Margaret HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 84–1811.

United States Court of Appeals, Seventh Circuit.

Submitted May 22, 1985.[*]

Decided June 25, 1985.

Arthur Stefans, Stefans, Stefans & Stefans, Chicago, Ill., Neal J. Barkan, Barkan & Barkan Co., L.P.A., Columbus, Ohio, for plaintiff-appellant.

Steven Plotkin, Office of Reg. Atty., Health & Human Services, Eileen M. Marutzky, Asst. U.S. Atty., Chicago, Ill., for defendant-appellee.

Before WOOD, COFFEY and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

*Stephens v. Heckler*, —— F.2d —— No. 84–1994 (7th Cir. June 21, 1985), holds that

---

[*] After a preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful in this case. The notice invited either party to file a "Statement as to Need or Oral Argument." Fed.R.App.P. 34(a); Circuit Rule 14(f). No such statement was filed, and the appeal has been submitted on the briefs and record.

when physicians who have examined a claimant for disability benefits disagree about the severity of the claimant's impairment, the administrative agency rationally may give greater weight to the opinion of a consulting physician because the consulting physician may bring to the case something the treating physician lacks. In *Stephens* the consulting physicians were specialists able to assess the claimant's case in light of their greater knowledge about similar cases and so assist the agency in evaluating the relative seriousness of the impairment. In this case the consulting physicians did not examine the claimant but reviewed reports assessing the claimant's impairment.

## I

From 1951 until August 1979 Willie Garrison worked as a laborer and "street mechanic" for People's Gas Co. in Chicago. He and other workers drove to a site where there was work to be done. Once there, Garrison moved pipes and other heavy materials that weighed up to 100 pounds. He quit because of increasing difficulty in breathing. Medical tests show that he has asthma and bronchitis, for which many drugs have been prescribed. Garrison also is obese and has diabetes, hypertension, and mild arthritis. Because the agency found that none of these substantially contributes to his difficulties in working, we concentrate on the breathing disorder.

Garrison testified that he experiences pain in bending (a claim the agency explicitly found not credible) and that because of his breathing impairment he has difficulty standing and walking. He stated that he runs out of breath if he walks a block and must rest 15–20 minutes before walking back. In response to a question, Garrison stated that he could lift 25–50 pounds "but I wouldn't be able to do it for any amount of time, to keep it up."

The record before the administrative law judge (ALJ) contains the reports of at least five medical professionals. Howard J. Zeitz, Garrison's treating physician, reported that Garrison suffers daily asthma attacks lasting from a few minutes to a few hours and is therefore disabled. Dr. Zeitz's diagnosis does not spell out the actual limitations on Garrison's exertion. Dr. Richard A. Herbert conducted a pulmonary function test (discussed below) showing Garrison's substantially diminished lung capacity. Herbert, too, concluded that Garrison is disabled; he, too, offered no specific statement of what Garrison can and cannot do. Milia Bacalla, a consultant internist, administered further pulmonary studies and conducted a full physical examination. His report states that Garrison is able-bodied except for the diminished ventilatory capacity, which "would impose marked restrictions" on Garrison's activity. Dr. Bacalla does not detail the nature of those restrictions. Two more physicians filled out "Physical Capacities Evaluations" —forms supplied by the agency designed to elicit information about the effects of a claimant's impairments on his ability to do work. These physicians reviewed only the documents supplied by the other physicians. Each concluded that Garrison frequently can bend, stoop, and operate foot controls; frequently can climb; but should avoid dust and variations of temperatures. Each opined that Garrison can do "medium" work.

Doubtless the most important reports for these physicians were six pulmonary function studies administered between 1979 and 1982. These studies show that Garrison, after inhaling a drug that opens breathing passages, can inhale and exhale in one breath between 58% and 94% of the air that a normal person of his sex, age, height, and weight can inhale and exhale. (The ranges are the highest and lowest for the six studies.) He can breathe in and out of his lungs in one minute between 55% and 57% of the normal amount of air. He can exhale in one second between 32% and 48% of the normal amount. A regulation specifies that a person with Garrison's diminished ability to exhale in one second who also has a very low ventilatory capacity over the course of a minute is automatically deemed disabled. 20 C.F.R. § 404.1525 & Appendix

I § 3.02. But Garrison's breathing capacity over the course of a minute substantially exceeds the disabling amount, so the regulations call for a more discriminating assessment of his abilities.

The physicians who filled out the Physical Capacities Evaluations attempted to provide that assessment. Although they, like the other physicians, provided conclusions rather than reasons, they alone among the physicians tried to specify the effects of Garrison's impairment on his ability to do particular tasks.

 The ALJ reviewed all of this evidence and found that as of February 1981 Garrison could do no more than sedentary work. Because Garrison was 53 at the time and has only a fifth-grade education, the regulation directed the ALJ to find Garrison disabled. (The regulations, called the Grid, translate a claimant's particular age, skills, and education into a finding of disabled or not disabled. See *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).) Garrison asked the Appeals Council to find that his disability commenced before February 1981. Doubtless much to his surprise, the Appeals Council instead found that he is not disabled at all. The Council reviewed the evidence anew and concluded that "pulmonary function studies of a record show a mild degree of abnormality which would preclude heavy work but not medium work." (If Garrison can do "medium" or even "light" work, the Grid prescribes a finding of not disabled.) Garrison sought judicial review of the decision. A magistrate recommended that the district court find the decision of the Appeals Council supported by substantial evidence.[1] The district court accepted the magistrate's recommendation and granted summary judgment to the Secretary.[2]

## II

The critical step in the agency's decision is the finding that Garrison can do "medium" work. Medium work "presupposes an ability to stand and walk at least six hours in an eight-hour day, lift 50 pounds maximum with frequent lifting and/or carrying of objects weighing up to 25 pounds." Dictionary of Occupational Titles (3d ed.); see also 20 C.F.R. § 404.1567(c). "Frequently" in turn means ten times in an eight-hour day.

Garrison conceded that he can lift 25 pounds, although he said that he cannot do this continuously. The only basis in the record for finding that Garrison can do it ten times in eight hours is the Physicial Capacities Evaluations. The ultimate conclusions of the physicians who filled out these forms conflict with the conclusions of Garrison's treating physician. He therefore invokes *Allen v. Weinberger*, 552 F.2d 781 (7th Cir.1977), and *Whitney v. Schweiker*, 695 F.2d 784 (7th Cir.1982). In each case this court held that the agency

---

1. When the decisions of the ALJ and the Appeals Council conflict, the decision of the Council is that of the Secretary. 20 C.F.R. § 404.981. A court must affirm that decision if supported by substantial evidence—even if the ALJ's contrary decision also was supported by substantial evidence. *Baker v. Heckler*, 730 F.2d 1147, 1150–51 (8th Cir.1984).

2. Garrison did not object to the report of the magistrate. This court has recently left unanswered the circumstances under which a failure to object to the magistrate's recommendation insulates that recommendation from attack. *Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237 (7th Cir.1985). See also *Thomas v. Arn*, 728 F.2d 813 (6th Cir.1984), *cert. granted*, —— U.S. ——, 105 S.Ct. 1391, 84 L.Ed.2d 781 (1985). We do not pursue the matter because the Secretary does not raise the issue. The failure of a party to object to the magistrate's recommendation does not destroy the jurisdiction of either the district court or this court. The case was before the district court under 42 U.S.C. § 405(g) all along, even when also before the magistrate. See *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976) (distinguishing disability referrals from those where the magistrate has some duty to find facts or where the district judge has an obligation to review the magistrate's acts as opposed to making an independent determination). The district court's final judgment is reviewable here under 28 U.S.C. § 1291, and a failure to object is a reason to affirm that judgment rather than a reason to dismiss for want of our jurisdiction. Therefore a failure to object to the magistrate's recommendation is not the sort of jurisdictional defect that a court must address even in the absence of a request by the parties to do so.

must credit the report of the treating physician in the event of a conflict.

The Supreme Court held in *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), that a report of a consulting physician may be substantial evidence for a finding of no disability, despite the contrary views of the treating physician. *Allen* held that a consulting physician's "speculative statement" (552 F.2d at 786) that a claimant could "possibly" do light work is not substantial evidence when the record contains a treating physician's credible report of total disability based on medically-determinable impairments. In *Allen* the treating physician had performed orthopedic surgery on the claimant and was well versed in the case; the consulting physician was not. *Whitney* held that a bare statement of a consulting specialist is not substantial evidence when the specialist does not examine the patient.

■ *Allen* and *Whitney* stand in some tension with *Perales*. We hesitate to extend them. At all events, neither case holds that consulting physicians' reports are not "substantial evidence" when the consulting physician brings to the case something of value to the administrative decision, such as greater expertise with an ailment, greater impartiality, or a greater range of experience that facilitates a comparison of one case against a standard or rule of decision. People often seek out specialists because of the knowledge they can bring to bear; *Stephens* holds that the agency rationally may do what patients do for themselves. We adhere to the rule of *Allen* and *Whitney* that a consulting physician cannot supply substantial evidence just by contradicting reports about the underlying facts or offering unfounded speculation. See also *Martin v. Secretary of HEW*, 492 F.2d 905 (4th Cir.1974). But when the consulting physician adds new information or perspectives, that may be substantial evidence. See *Diaz v. Secretary of HEW*, 613 F.2d 1194 (1st Cir.1980).

The question in Garrison's case is not whether he has a breathing disorder; he does. It is not whether this is severe; it is.

It is not whether the impairment prevents him from doing his old job; it does. This is about as far as the reports of Garrison's treating physician go on the facts. The treating physician's further assertion that Garrison is disabled from any employment is not a medical statement at all. See 20 C.F.R. § 404.1527 (physician's conclusion not dispositive). It is a proposition about how particular medical impairments produce reductions in physical exertion, and how such reductions in exertion affect the ability to work. The treating physician's views do not answer the question or tell the agency what tasks Garrison can and cannot perform. The consulting physicians, however, provide information about whether the claimant can walk, lift, stand, and so on, with a given diminution in ventilatory capacity. The making of such evaluations may lie more within the ken of those who evaluate pulmonarly disorders routinely than in the knowledge of general practitioners.

Garrison's impairment can be stated in precise terms. The readings of the pulmonary function studies have known meanings, and we think it permissible for the agency to show these readings to other physicians and ask what they mean for a person's ability to perform particular tasks. Physicians with the opportunity to evaluate many such readings are in a better position than general practitioners to translate readings to assessments of the limits on capacity to work.

Suppose Garrison's treating physician had taken a reading of Garrison's eyesight, concluded that his vision with best correction is 20/40 in each eye, and opined that Garrison is therefore unable to work. The agency would be entitled to show this report to a specialist and obtain an opinion about whether 20/40 vision prevents someone from seeing enough to work as a manual laborer. If the person with expertise in assessing the consequences of impaired vision should conclude that Garrison could do certain kinds of work, the agency would be entitled to accept this rather than the contrary view of the treating physician.

Garrison's impairment, like this example, is subject to reasonably precise measurements. These may be reviewed by specialists and by the Secretary's delegate. Unless the claimant establishes that the specialists misread or misunderstood the results of the test, or that the objective tests do not accurately describe the impairment, the consulting physicians' reports may supply substantial evidence for the agency's finding. Garrison does not maintain that his treating physician had access to information that supplements the quantifiable evidence and shows that Garrison was much less able to work than the numbers in the pulmonary function studies show. Garrison did claim that pain from arthritis impeded his abilities more than the numbers would show, but the Appeals Council resolved this claim against him. In *Switzer v. Heckler*, 742 F.2d 382 (7th Cir.1984), a case otherwise similar to Garrison's, the claimant's treating physician stated that despite the pulmonary studies the claimant could not stand at all or lift even five pounds. We held that the agency must expressly consider such evidence that casts doubt on the tests. Here the only evidence that casts doubt, Garrison's testimony of pain, was considered and rejected.

We emphasized in *Stephens* that all ultimate findings in disability cases are arbitrary to a significant degree. The statute requires the agency to find "disability" or "no disability" when the world cannot be put so neatly in two discrete packages. It is inevitable that cases all but indistinguishable to outside observers such as courts will be treated differently. The use of consulting physicians in cases such as this one reduces the arbitrariness of the process. See Jerry L. Mashaw, *Bureaucratic Justice: Managing Social Security Disability Claims* 130–31 (1983) (data show not only greater ability to treat similar cases the same way but also that use of consulting physicians is twice as likely to change a denial of a claim to a grant as to change a grant to a denial). See also *id.* at 61–74, 106–23, 128–39, 177–80. See also *Mathews v. Eldridge*, 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976) (approving reference to use of consulting physicians).

There must be at least 100,000 people in the United States with serious breathing difficulties, even apart from those covered by the Black Lung Benefits Act. Our court has published several opinions per year in such cases, and these opinions are a tiny fraction of the administrative caseload. E.g. *Switzer, supra; Wallschlaeger v. Schweiker*, 705 F.2d 191 (7th Cir.1983). If the agency were required to credit the treating physicians' impressions about whether these breathing difficulties were "serious enough" to make their patients disabled, then the determinations would depend more on the experience, intuitions, and even penchant for charity of the treating physicians than on the actual medical impairments of the claimants. Some people with a 40% ventilatory capacity would be deemed able to do medium work, while others with a 75% capacity would not. The agency's approach, using reviewing physicians, reduces the disparity. It is not altogether unlike the Grid or the parole release guidelines or the sentencing guidelines Congress has authorized. These "mechanical" approaches achieve greater uniformity.

True, the uniformity comes at a cost. The agency's approach produces arbitrary decisions in the sense that it draws fine lines, and review of the medical records cannot capture all of the elements that may make one claimant just a little more or less capable than the paper evaluations otherwise suggest. There is no non-arbitrary way to make yes-or-no findings of disability, however, and the Secretary has not embarked on a path that needlessly increases the arbitrariness of the system. The choice to have a little less individual treatment and a little more uniformity is within the agency's authority under the statute.

We conclude that in cases in which medical impairments may be described in relatively objective ways, a "'reasonable mind might accept as adequate'" (*Richardson v. Perales, supra*,

402 U.S. at 401, 91 S.Ct. at 1427) the evaluations of physicians with access to the available data. See *Gordon v. Schweiker*, 725 F.2d 23 (4th Cir.1984).[3] The preference for the views of the treating physician discussed in *Allen* and *Whitney* applies only when ability to observe the claimant over an extended period is essential to an accurate understanding. In this case, Dr. Bacalla after first-hand examination found Garrison able-bodied except for the breathing problem. Given this conclusion, the two Physical Capacities Evaluations of the breathing disorder's effects therefore supply substantial evidence for the Appeals Council's conclusion that Garrison can do medium work.

AFFIRMED.

---

**3.** There appears to be a conflict among the circuits on the treatment of consulting physicians. The First Circuit in *Diaz* and the Fourth Circuit in *Gordon* permit reliance on consulting physicians. The Fifth, see *Bowman v. Heckler*, 706 F.2d 564 (5th Cir.1983); Sixth, see *Burchett v. Mathews*, 575 F.2d 1189 (6th Cir.1978); and perhaps others do not. The law in other circuits is in internal conflict. Compare *Landess v. Weinberger*, 490 F.2d 1187 (8th Cir.1974), and *Woodard v. Schweiker*, 668 F.2d 370 (8th Cir. 1981), with *Davis v. Schweiker*, 671 F.2d 1187 (8th Cir.1982).