842 F.2d 331
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William KELLY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 87-3385.
 United States Court of Appeals, Sixth Circuit.
 March 16, 1988.
 
 Before KRUPANSKY and WELLFORD, U.S. Circuit Judges, GILMORE U.S. District Judge.*
 PER CURIAM:
 
 
 1
 William Kelly appeals the Secretary's denial of his disability insurance benefits claim. The district court affirmed the denial, finding that a vocational expert's testimony regarding Kelly's ability to perform 1500 jobs in the regional economy was sufficient to support the Secretary's conclusion that Kelly could perform jobs existing in significant numbers in the regional economy. We find that the record contains substantial evidence to support the Secretary's determination of Kelly's residual functional capacity and his ability to perform his past work to substantiate denial of Kelly's claim. The record contains substantial evidence also to support the finding that Kelly can perform jobs that exist in "significant numbers" in the regional economy, as that term is clarified in Hall v. Secretary of HHS, --- F.2d ----, No. 86-3900 (6th Cir. Jan. 20, 1988).
 
 
 2
 Kelly alleged an onset disability date in May of 1982, claiming disability resulting from emphysema and asthma. He completed an eleventh grade education plus a five month course at Garfield Training School in basic maintenance. His prior work experience included employment as a general maintenance repairman, commercial cleaner, construction worker, truck driver, and window repairman. Kelly last met the special earnings requirements for disability insurance benefits on September 30, 1983.
 
 
 3
 After a hearing the ALJ denied benefits, based on a determination that Kelly retained the residual functional capacity for light work and could perform a significant number of jobs in the regional economy. The Appeals Council affirmed the ALJ's recommended decision to deny benefits. The district court first remanded the case for the taking of expert vocational testimony regarding Kelly's ability to perform substantial gainful activity in light of environmental restrictions on his residual functional capacity, an inability to work around dust and fumes.
 
 
 4
 The ALJ after hearing from a vocational expert concluded that (1) Kelly suffered from "severe chronic obstructive pulmonary disease, coronary artery disease, a hiatal hernia, and occasional numbness in the extremities," but did not have impairments meeting the listings; (2) that Kelly retained the functional capacity to perform light work not involving exposure to temperature extremes or commercial or industrial dust, fumes, and smoke; (3) Kelly could perform his past work as commercial cleaner at a light exertional level; and (4) Kelly had "acquired work skills from his past work which could be applied to meet the requirements of semi-skilled light work including electrical appliance repairman, product repairer, electrical assembler, and electrical inspector II [, which] jobs exist in significant numbers in the regional economy."
 
 
 5
 Upon reinstatement of the case to the district court and a remand to the magistrate, reversal was recommended on the ground that, as a matter of law, the jobs that had been identified did not exist in "significant numbers." The district court rejected the magistrate's recommendation, based on Wheeler v. Secretary of Health and Human Services, 802 F.2d 461 (6th Cir.1986) (unpublished opinion), and affirmed the Secretary's decision.
 
 
 6
 Kelly argues that the ALJ's finding that he had the residual functional capacity to perform a full range of light work activity, including standing and walking, was not supported by substantial evidence. Kelly relies primarily on pulmonary function studies performed by Dr. Martin Beerman in February 1983, and his own testimony.[1]
 
 
 7
 It is first worth noting that Kelly's counsel conceded the correctness of the ALJ's original finding regarding Kelly's residual functional capacity at oral argument before Magistrate Merz, a concession that counsel acknowledged at the second hearing before the ALJ. Even without this concession, however, we find that substantial evidence supports the Secretary's determination. Although the pulmonary function studies showed Kelly to be outside the normal ranges for forced expiratory volume and maximum voluntary ventilation, and Dr. Beerman found him to have fairly advanced chronic obstructive pulmonary disease, these facts do not necessarily indicate any restrictions on Kelly's ability to walk and stand. It is only Kelly's own testimony that he could walk only a block or two that suggests an inability to do the walking and standing required by light work activity. See 20 C.F.R. Sec. 404.1567(b).
 
 
 8
 No medical reports, however, place restrictions on Kelly's activities that would preclude him from performing light work. In September 1982, five months after the alleged onset of Kelly's disability and two-and-a-half months after a hernia operation, Kelly's physician said he could return to work without restrictions. In the spring of 1983, two physicians of the Ohio State Agency reviewed Kelly's medical records and concluded that he could stand and/or walk a total of six hours out of an eight-hour day and could perform medium level work as long as he was not exposed to dust and fumes. These conclusions constitute substantial evidence, even though the consulting physicians did not examine Kelly, in light of the fact that their findings were based on objective test results and did not contradict the findings of treating physicians. See Garrison v. Heckler, 765 F.2d 710 (7th Cir.1985). The determination that Kelly was capable of performing a full range of light work activity, with only environmental restrictions, was therefore supported by substantial evidence.
 
 
 9
 At the second administrative hearing, the vocational expert testified that Kelly was capable of performing the job of commercial cleaner--a job that Kelly previously had performed at a heavy to medium exertional level--at a light exertional level. The expert testified that at least a thousand such jobs existed in the region and that the jobs did not require exposure to industrial dust or fumes. Kelly argues that a commercial cleaner, even at the light exertional level, would be exposed to a dusty environment. Kelly's counsel sought to get the vocational expert to confirm this argument, but the expert would confirm no more than that "if somebody were to go around and dust and vacuum and stir up the dust," there would be more dust than was then present in the hearing room.
 
 
 10
 The vocational expert's testimony constitutes substantial evidence supporting the ALJ's determination that Kelly "could perform 1,000 commercial cleaner jobs, substantially similar to the duties he had performed in the past, at the light level." Because Kelly could return to his past type of work, if not his past particular job, the Secretary was justified in finding him not disabled on this basis alone. See Studaway v. Secretary of HHS, 815 F.2d 1074 (6th Cir.1987).
 
 
 11
 The ALJ also found that Kelly "could perform other jobs existing in significant numbers since the Vocational Expert was able to identify 1,500 semi-skilled light positions in the regional economy to which the claimant's acquired work skills would transfer." Specifically, the vocational expert testified that Kelly's past work was classified as skilled and semi-skilled, and that Kelly would have acquired transferable skills such as using hand and power tools, using measuring devices and equipment, reading wiring diagrams, operating motor vehicles, and knowledge of structural repair. The vocational expert testified that these skills would transfer to a number of jobs at the light and semi-skilled level, and that there existed 1500 of those combined jobs in the regional economy. She further testified that all the jobs identified to which Kelly's skills would transfer were less demanding in terms of skill than Kelly's past work. Even after Kelly testified regarding the limited extent of his experience with wiring, circuitry, and reading drawings, the expert did not retreat from her opinion regarding the transferability of Kelly's skills.
 
 The regulations state:
 
 12
 (d) Skills that can be used in other work (transferability) --(1) What we mean by transferable skills. We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.
 
 
 13
 (2) How we determine skills that can be transferred to other jobs. Transferability is most probable and meaningful among jobs in which--
 
 
 14
 (i) The same or a lesser degree of skill is required;
 
 
 15
 (ii) The same or similar tools and machines are used; and
 
 
 16
 (iii) The same or similar raw materials, products, processes, or services are involved.
 
 
 17
 (3) Degrees of transferability. There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. A complete similarity of all three factors is not necessary for transferability....
 
 
 18
 20 C.F.R. Sec. 4094.1568. The vocational expert's testimony provides substantial evidence for the ALJ's finding that Kelly's skills would transfer to the types of jobs identified by the expert, which require the same or lesser level of skill than Kelly's former work. The ALJ found the expert to be credible, and reasonably could conclude, based on her testimony, that Kelly did have skills transferable to the jobs she identified. See Richardson v. Perales, 402 U.S. 389 (1971).
 
 
 19
 Finally, Kelly argues that even if the expert's testimony is accepted, it fails to show that Kelly is capable of performing work that exists in significant numbers. The expert testified that out of approximately 4000,000 jobs in the regional economy, Kelly could perform 1500 of such jobs. Kelly argues that, as a matter of law, this small percentage of jobs in the regional economy cannot be considered to be "significant numbers" satisfying the statutory test. See 42 U.S.C. Sec. 423(d)(2)(A).
 
 
 20
 We have recently decided a case that disposes of Kelly's argument in this regard. In Hall v. Secretary of HHS, --- F.2d ----, No. 86-3900 (6th Cir. Jan. 20, 1988), the ALJ had found proof that the claimant could perform more than 1350 jobs out of approximately 540,000 jobs in the local economy. This court held that the finding satisfied the "significant numbers" test. The court concluded:
 
 
 21
 "Congress did not intend to foreclose a claimant from disability benefits on the basis of the existence of a few isolated jobs." However, when there is testimony that a significant number of jobs exists for which a claimant is qualified, it is immaterial that this number is a small percentage of the total number of jobs in a given area.
 
 
 22
 Page 5-6 of slip opinion, quoting Walker v. Mathews, 546 F.2d 814, 819 (9th Cir.1976). Under Hall, the ALJ's finding that Kelly has skills that will transfer to 1500 jobs in the regional economy must be found to satisfy the significant numbers requirement.
 
 
 23
 We accordingly AFFIRM the decision of the district court.
 
 
 
 *
 The Honorable Horace W. Gilmore, U.S. District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Kelly also relies on medical reports made in 1985, but because these reports reflect Kelly's condition only a considerable time after the expiration of his insured status on September 30, 1983, they are not deemed relevant to determine whether he was disabled on or before September 30, 1983