Boyd L. SORENSON, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.

No. 87–C–0121S.

United States District Court, D. Utah, C.D.

Nov. 16, 1988.

Anne M. Stirba, Richard D. Parry, Asst. U.S. Attys., Salt Lake City, Utah, for plaintiff.

Clella C.L. Lawrence, Utah Legal Services, Provo, Utah, for defendant.

## RULING

SAM, District Judge.

Plaintiff Boyd L. Sorenson contests the decision of the Secretary of Health and Human Services denying him disability insurance benefits and supplemental security income. In January 1985, Sorenson applied for benefits under the Social Security Act. His applications were initially denied by the Social Security Administration. Thereafter, Sorenson requested a hearing before an Administrative Law Judge (ALJ). The ALJ again denied Sorenson's applications. Sorenson sought review before the appeals council (council). The council also denied benefits, albeit for different reasons. The decision of the council is now before this court for review.

When Sorenson appeared before the ALJ, he was 45 years old, had an I.Q. of 73, and had terminated his 15–year occupation as a dry-wall finisher because he allegedly suffered from increasingly debilitating asthma, interstitial fibrosis and chronic obstructive pulmonary disease. On June, 10, 1986, the ALJ found that Sorenson's residual functional capacity limited him to "sedentary" work. The ALJ also found Sorenson had a 10th-grade education. Without entering a specific finding of literacy, the ALJ applied grid rules for literate claimants with limited education who were capable of "sedentary" work. The grid rules directed a decision that Sorenson was not disabled. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.19 (1986).

On July 9, 1986, Sorenson sought review before the council, specifically asserting the ALJ should have applied grid rules for illiterate claimants. From Sorenson's perspective, the issue of literacy was dispositive of his entitlement to benefits because, under grid rules for his age group, illiterate claimants limited to "sedentary" work were disabled. *Id.* Rule 201.20.

On September 5, 1986, the council notified Sorenson that they had reviewed the ALJ's decision and believed Sorenson could perform "medium", as opposed to "sedentary", work. The prospect of upgrading the ALJ's assessment of Sorenson's residual functional capacity was significant because, under the grid rules, if Sorenson were capable of "medium" work, a finding that he was illiterate would not entitle him to benefits. *Id.* Rule 203.26–.27. Sorenson was allowed 20 days to respond or submit additional evidence.

On December 15, 1986, the council issued its decision. Although the council believed Sorenson was illiterate, it concluded that the ALJ erred in finding Sorenson only capable of "sedentary" work. The council, relied on 1) pulmonary function studies performed on January 23, 1985 and February 2, 1985, 2) an exercise report dated February 26, 1985, 3) chest x-rays dated January 1, 1985, and 4) a psychological report dated July 16, 1985, to find Sorenson was capable of "medium" work. The council apparently considered expert analysis of test results more credible than the opinion of Sorenson's treating physician and the claimant's own testimony. Grid rules, for illiterate claimants capable of "medium" work, required the council to find that Sorenson was not disabled. *Id.*

Sorenson again appeals this determination. He asserts the council was time-barred from expanding the scope of review beyond the issue of literacy because the council failed to raise other issues within 60 days from the ALJ's decision. Sorenson cites 20 C.F.R. § 404.969 (1986), applicable to council-initiated review, which provides as follows:

Anytime within 60 days after the date of a hearing decision or dismissal, the Appeals Council itself may decide to review the action that was taken. If the Appeals Council does review the hearing decision or dismissal, notice of the action

will be mailed to all parties at their last known address.

Pursuant to 28 U.S.C. § 636(b)(1)(B), the case was referred to the United States Magistrate for a report and recommendation. On February 3, 1988, the Magistrate recommended reversal of the Secretary's decision denying benefits. The Magistrate accepted Sorenson's argument that § 404.969 time-barred review of Sorenson's residual functional capacity.

Upon de novo review, the court addresses two issues. First, does the 60–day limitation applicable to council-initiated appeals preclude the council from reconsidering Sorenson's residual functional capacity? Second, does the record support the council's decision reversing the ALJ's finding that Sorenson was only capable of "sedentary" work?

Sorenson relies on *Powell v. Heckler*, 789 F.2d 176 (3rd Cir.1986) and *Kennedy v. Bowen*, 814 F.2d 1523 (11th Cir.1987) for the proposition that 20 C.F.R. § 404.969 precludes the council from expanding the scope of claimant-initiated review, unless the claimant is notified, of the issues raised by the council, within 60 days of the ALJ's decision. *Powell* supports this proposition, but *Kennedy* does not. For reasons explained below, the court applies the reasoning of *Kennedy*.

*Powell* and *Kennedy* are factually distinguishable from the instant case and therefore do not compel a decision in Sorenson's favor. Claimants Powell and Kennedy were each awarded benefits by the ALJ. Each sought limited review of the benefit-onset date. The council, without notifying the claimants within 60 days of the ALJ's decision, or at all, reconsidered *sua sponte* the ALJ's findings of disability, found that Powell and Kennedy were not disabled, and denied benefits. Consequently, their benefits were taken away without a fair opportunity to address issues raised by the council. In contrast, Sorenson was denied benefits prior to council review. He requested reconsideration of the ALJ's decision that he was not disabled, specifically contending the ALJ should have applied grid rules for illiterate claimants. Fifty-eight days there-

after, the council notified Sorenson of its intention to review his residual functional capacity, and allowed him a reasonable time, 20 days, to submit additional evidence. Thus, the claimant's right to procedural due process, and evidence of its violation, is clearer and more compelling in *Powell* and *Kennedy*. Similarly, the central issues are different. *Powell* and *Kennedy* consider the council's duty to notify a claimant of issues the council raises which may result in reversing a decision granting benefits. The instant case addresses the timeliness of notice regarding council expansion of the scope of claimant-initiated review of benefit denial.

Nonetheless, *Powell* and *Kennedy* provide a framework to determine which regulation, 20 C.F.R. § 404.969 or 20 C.F.R. § 404.973, should apply. *Powell* and *Kennedy* each rely on a different regulation to establish the notice requirements relative to council expansion of the scope of claimant-initiated review. *Powell* applies the 60–day limitation of 20 C.F.R. § 404.969, drawing no distinction between council-initiated review, to which § 404.969 clearly applies, and council expansion of the scope of claimant-initiated review. *Kennedy* declines to apply 20 C.F.R. § 404.969 to claimant-initiated reviews. Rather, *Kennedy* applies the notice requirement of 20 C.F.R. § 404.973 as dictated by due process and substantial fairness. See *Kennedy v. Bowen*, 814 F.2d 1523, 1528 (11th Cir.1987). 20 C.F.R. § 404.973 (1986) provides,

> When the Appeals Council decides to review a case, it shall mail a notice to all parties at their last known address stating the reasons for the review and the issues to be considered.

■ For three reasons, the court applies 20 C.F.R. § 404.973, rather than § 404.969, to establish notice requirements relative to council expansion of the scope of claimant-initiated review. First, application of the 60–day limitation of § 404.969 to claimant-initiated reviews would unreasonably restrict the council from performing a thorough review of claimant-initiated appeals. Since the council may not review each uncontested ALJ decision denying benefits, a

dissatisfied claimant could effectively limit the scope of review by delaying the filing of an appeal until the council would have insufficient time, within the 60 day limitation, to thoroughly review the case. Second, the claimant's interest in finality, the primary purpose of the 60–day limitation on council-initiated review, is less compelling when the claimant requests review and thereby challenges the finality of the ALJ's adverse decision. Third, the court finds persuasive the *Kennedy* analysis that 20 C.F.R. § 404.969 applies to council-initiated reviews whereas § 20 C.F.R. § 404.973 applies to both claimant-initiated and council-initiated reviews.

The *Kennedy* court analyzes the statutory language of 20 C.F.R. § 404.973 as follows:

> The meaning of § 404.973 is clear. This provision applies in cases of both claimant-initiated and appeals council own-motion review. Under each circumstance, it is beyond question that "the Appeals Council decides to review a case." *Id.* This is so in the case of a claimant-initiated review because once the claimant has sought an appeal, "[t]he appeals council may deny or dismiss the request for review, or it may grant the request...." When the council grants the request, it has in effect "decide[d] to review [the] case." In cases of appeals council own-motion review, the provision also states that the council decides to review the case. The regulation provides that "[a]nytime within 60 days after the date of a hearing decision or dismissal, the Appeals Council may itself *decide* to review the action that was taken...." § 404.969 (1986) (emphasis added).

The *Kennedy* court then concludes,

> Because we find that the general notice requirement of § 404.973 is applicable, we choose to rely on it as the basis of our holding instead of inferring a notice requirement from § 404.969 which by definition applies in cases of appeals council own-motion review.

*Kennedy v. Bowen,* 814 F.2d 1523, 1527–28 (11th Cir.1987).

■ As stated, § 404.973 does not impose the 60–day notice requirement on the council. Instead, this court concludes observance of the notice requirement of § 404.973 is measured by due process and fundamental fairness. *See Kennedy* at 1528. The question before the court therefore is whether the council's notice made 58 days after Sorenson's request for review violated due process or fundamental fairness. Because 1) Sorenson requested review of the decision that he was not disabled, and 2) council's notice clearly stated the reasons for review, raised the issue of Sorenson's residual functional capacity, and allowed Sorenson a reasonable time to address it, the court's sole concern is the timeliness of the notice. In this situation, the court is not persuaded that providing notice 58 days after Sorenson requested review violated due process or fundamental fairness.

■ Sorenson next argues that neither the ALJ's nor the council's decision is supported by the weight of the evidence. Sorenson contends 1) the ALJ erroneously found Sorenson was literate and 2) the council erroneously found Sorenson was capable of "medium" work. However, because the council's decision is the final decision of the Secretary, the court will review only the decision of the council. *Fierro v. Bowen,* 798 F.2d 1351, 1354 (10th Cir.1986); 20 C.F.R. § 404.900 (1986). Generally, if the findings of the council are supported by substantial evidence, then they are conclusive. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). "Evidence is not substantial 'if it is overwhelmed by other evidence ... or if it really constitutes not evidence but mere conclusion.'" *Knipe v. Heckler,* 755 F.2d 141, 145 (10th Cir.1985) (quoting *Kent v. Schweiker,* 710 F.2d 110, 114 (3rd Cir.1983)).

■ However, in certain situations the law requires "heightened scrutiny" in the application of the substantial evidence standard. "[W]here the Secretary, acting through the appeals council, overturns a decision of the ALJ granting benefits, and, in so doing, differs with the ALJ's assessment of witness credibility, the Secretary should fully articulate his reasons for so doing, and then, with heightened scrutiny, [the court] must decide whether such reasons find support in the record." *Fierro v. Bowen,* 798 F.2d 1351, 1355 (10th Cir.1986). Although the ALJ in this case did not grant benefits, the court, for two reasons, believes the council's decision to overturn the ALJ's finding of residual functional capacity is analogous to *Fierro* and therefore requires heightened scrutiny. First, the council properly reasoned that the ALJ's finding that Sorenson completed a 10th-grade education did not require a conclusion he was literate. Based upon substantial evidence in the record, the council found Sorenson was illiterate. Therefore, the ALJ would have granted benefits but for the application of the wrong grid rule. Second, the council, reviewing Sorenson's residual functional capacity, apparently rejected, in part, the testimony of the claimant, and the opinion of his treating physician, in favor of two doctors' analysis of clinical test results. Accordingly, the council's disagreement with the ALJ relative to Sorenson's residual functional capacity is based in part on differences of opinion as to the credibility of Sorenson and Sorenson's treating physician.

■ The Tenth Circuit sets forth a general rule in assessing the medical opinions of treating physicians: "If the medical opinions of treating physicians are to be rejected, specific, legitimate reasons for so doing must be set forth." *Talbot v. Heckler,* 814 F.2d 1456, 1464 (10th Cir.1987). A treating physician's opinion on the subject of medical disability is entitled to extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians. *Kemp v. Bowen,* 816 F.2d 1469 (10th Cir. 1987). Furthermore, opinions of doctors who have never examined patients have "less probative force, as a general matter, than they would have had if they had treated or examined him". *Talbot* at 1463 (quoting *Wier ex rel. Wier v. Heckler,* 734 F.2d 955, 963 (3d Cir.1984)).

■ However, the deference given under the law to opinions of treating physicians does not require acceptance of such opinions in all circumstances. *See* 20 C.F. R. § 404.1527, and *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). *Garrison v. Heckler,* 765 F.2d 710 (7th Cir.1985), describes an exception applicable here. In *Garrison,* the court affirmed the council's decision to reject the opinion of the treating physician in favor of two consulting physicians' evaluations of pulmonary function tests. Consequently, Garrison was found capable of "medium", rather than "sedentary", work. The court reasoned as follows:

> Garrison's impairment can be stated in precise terms. The readings of the pulmonary function studies have known meanings, and we think it permissible for the agency to show these readings to other physicians and ask what they mean for a person's ability to perform particular tasks. Physicians with the opportunity to evaluate many such readings are in a better position than general practitioners to translate readings to assessments of the limits on capacity to work....

> If the agency were required to credit the treating physicians' impressions about whether these breathing difficulties were "serious enough" to make their patients disabled, then the determinations would depend more on the experience, intuitions, and even penchant for charity of the treating physicians than on the actual medical impairments of the claimants. Some people with a 40% ventilatory capacity would be deemed able to do medium work, while others with a 75% capacity would not. The agency's approach, using reviewing physicians, reduces the disparity.

*Id.* at 713–14.

The court then concluded,

The preference for the views of the treating physician ... applies only when ability to observe the claimant over an extended period is essential to an accurate understanding.

*Id.* at 715.

Sorenson's impairment, like Garrison's, is subject to reasonably precise measurement which consultants may accurately assess without observing the claimant. The council rejected the opinion of the treating physician, submitted by letter dated January 18, 1985, because the clinical tests relied upon by the treating physician, and enclosed therewith, did not support his conclusion. These tests, including most significantly a chest x-ray report and a pulmonary function study, provided the only substantive medical evidence of Sorenson's impairment offered by the treating physician. He concluded, "Boyd (Sorenson) is capable of sitting without shortness of breath, he can also stand in one spot without shortness of breath. Walking greater than 20 yds. causes pallor, cyanosis, tachycardia and severe shortness of breath. There's no capability for further lifting or bending due also to the same physical symptomatology." Two consulting physicians reviewed the treating physician's tests, together with another pulmonary function study and exercise report dated February 26, 1985, which indicated his impairment may have been more severe than indicated by the pulmonary function study relied upon by the treating physician. Both consultants concluded Sorenson could carry up to 50 pounds, frequently lift and/or carry 25 pounds, stand and walk about 6 hours per day and otherwise perform medium work so long as he avoided pulmonary irritants.

The council provided Sorenson an opportunity to refute this conclusion with additional evidence. In a letter dated September 6, 1986, the council informed Sorenson it would review the ALJ's decision. The council stated its predisposition to upgrade the ALJ's residual-functional-capacity finding and set forth its reasons as follows:

This conclusion is based on pulmonary function studies performed on January 23, 1985 showing a FEV of 2.2 (Exhibit 20), pulmonary function studies dated February 2, 1985 showing a FEV of 1.9 and MVV of 57, chest X-rays dated January 2, 1985 showing evidence of mild obstructive pulmonary disease, and an exercise report dated February 26, 1985 showing a $PACO2$ of 35.7 and a $PAO2$ of 71 (Exhibit 21). The Council also considered the psychological report dated July 16, 1985, which reveals that you have an I.Q. of 73. Although you lack the ability to read and write and have a memory deficit, the psychologist concluded that you could follow instructions and work in a routine type work setting with only minimal supervision. He further concluded that you would be successful in a work setting in which you could provide for some of your needs (Exhibit 24).

Sorenson was allowed 20 days to respond. Counsel responded by asserting that the weight of the evidence established that Sorenson was limited to sedentary work. He did not provide additional medical evidence to discredit the test results or the council's assessment thereof. The court therefore concludes that the treating physician's opinion is unsupported and contradicted by the medical evidence. *See, Allison v. Heckler,* 711 F.2d 145, 148 (10th Cir.1983) (a treating physician's opinion may be discounted for these reasons).

■ The court now turns briefly to Sorenson's testimony. At the hearing before the ALJ, Sorenson testified he could not walk more than a block without resting, could not stand for extended periods of time, could not carry 50 pounds more than 10 feet, had difficulty breathing, and required rest after exerting himself 15 minutes. Tr. 46, 47, 54 and 65. The council found Sorenson's testimony was "credible to the degree that the symptoms limit the claimant to no more than medium work." The extent to which this testimony may be inconsistent with capacity to perform "medium" work is unclear. Medium work "presupposes an ability to stand and walk at least six hours in an eight-hour day, lift 50 pounds maximum with frequent lifting and/or carrying of objects weighing up to 25 pounds." Dictionary of Occupational

Titles (3d ed.); 20 C.F.R. § 404.1567(c) (1986). Nonetheless, the council's finding is likewise supported by the results of pulmonary function studies, x-rays and exercise report.

Because 1) the council stated its reasons for upgrading the ALJ's assessment of Sorenson's residual functional capacity, 2) the reasons given provide a legitimate basis for rejecting Dr. Pratt's testimony and, in part, Sorenson's testimony, and 3) the reasons are supported by substantive evidence in the record, the court concludes the council's decision withstands heightened scrutiny. Accordingly, the decision of the council is affirmed.