881 F.2d 1077
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Karen TOKARZ, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH and HUMAN SERVICES, Defendant-Appellee.
 No. 88-2210.
 United States Court of Appeals, Sixth Circuit.
 Aug. 11, 1989.
 
 Before KENNEDY and KRUPANSKY, Circuit Judges, and WENDELL A. MILES, Senior District Judge.*
 PER CURIAM:
 
 
 1
 Appellant Karen Tokarz appeals the decision of the District Court upholding the Secretary's denial of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Because we agree with the District Court that the Secretary's decision was supported by substantial evidence, we affirm.
 
 
 2
 Appellant applied for benefits on March 21, 1986. She claims to have become disabled on December 8, 1984, because of an arterial blockage in her left leg, phlebitis, and a heart problem. She also claims to suffer recurrent pain in her left shoulder, angina, high blood pressure, and anemia. She allegedly has pain in her left leg 95% of the time and experiences periodic nosebleeds, dizziness, and episodic confusion. Appellant claims she can stand for only five minutes and can sit for only 30 minutes because of leg pain. She also cannot use her arms above shoulder level and can only lift 5 lbs. because of pain in her left shoulder. Although she can do light housework and can drive, she testified she spends most of her time sitting with her feet elevated above her heart, to relieve leg pain caused by a deep venous thrombosis.
 
 
 3
 For the 15 years before allegedly becoming disabled, appellant worked as a maid, nightclub manager, automobile biller, and data processor. In December 1984, she had a slip and fall in which she injured her left shoulder, left leg, and fractured her wrist. After those injuries in 1984, she worked in data entry for a temporary employment service until December 7, 1985. She has been unemployed since that time. She claims that her last job required that she sit for extended periods and lift up to 25 lbs. Appellant was hospitalized and treated by a Dr. Inwald from March 23, 1986 to April 3, 1986 for phlebitis stemming from her 1984 accident.
 
 
 4
 Dr. Inwald, appellant's treating physician, reported in 1987 that he had treated appellant for two to four years for phlebitis and that it was "impossible for her to do any gainful activity." He listed as complicating factors obesity, congestive heart failure, and chronic obstructive pulmonary disease. In response to a Department of Social Services letter of inquiry dated February 3, 1987 requesting medical documentation for several of appellant's claims, including injury to her arm and shoulder, Dr. Inwald responded that appellant complained of these problems, but that "treatment was neglected." The letter also requested documentation for appellant's claim that she had to elevate her legs above her heart. Dr. Inwald's only response was the statement "This is needed. This is true." When asked to document appellant's heart condition, Dr. Inwald responded that appellant had hypertensional cardiovascular disease and angina. A February 19, 1987 statement by Dr. Inwald said, without explanation, that appellant "should be bedridden with her feet elevated above her heart."
 
 
 5
 Dr. Balakrishna, a cardiovascular specialist, who examined appellant for the Secretary, agreed that she had a deep vein thrombosis in her left leg, but found no evidence of other vascular disease. Dr. Balakrishna said her chest pains were not consistent with angina, although there was a remote possibility it could exist. An electrocardiogram revealed no valvular heart disease. In his October 9, 1986 report, Dr. Balakrishna said electrocardiograms did not confirm the diagnosis of angina. He also said there was no neurological or vascular damage in appellant's left arm. She did, however, still suffer from deep vein thrombosis. Dr. Balakrishna advised that appellant could lift 5-10 lbs., could stand for one hour, and that sitting was not affected by her impairment.
 
 
 6
 A vocational expert, Lawrence Zatkin, stated that appellant could continue her past relevant work if she could stand for one hour and sit for seven, even if her feet were elevated by a footstool. She would be unemployable, however, if she had to elevate her feet above her heart.
 
 
 7
 On appeal, the Secretary's decision must be upheld if it is supported by "substantial evidence." Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). The reviewing court must uphold the Secretary's decision even if the court would have reached a different result based on the evidence. Beavers v. Secretary of Health, Ed. and Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951)). The court may not resolve evidentiary conflicts or decide questions of credibility. Myers v. Richardson, 471 F.2d 1265 (6th Cir.1972).
 
 
 8
 The ALJ's finding that appellant was not disabled is supported by substantial evidence. Although the opinions of a claimant's treating physician are given significant deference and, if uncontradicted, must be given full deference, King v. Heckler, 742 F.2d 968 (6th Cir.1984), the ALJ is not required to defer if there is not adequate medical data to support the treating physician's opinion. Id.; Garner v. Heckler, 745 F.2d 383, 391 (6th Cir.1984). An ALJ must, however, provide clear and convincing reasons for rejecting an expert's opinion. Allen v. Heckler, 749 F.2d 577, 578 (9th Cir.1984). The Secretary retains ultimate authority for deciding whether a claimant is disabled. Garner, 745 F.2d 383.
 
 
 9
 The ALJ appropriately refused to defer to the treating physician's medical opinion. The ALJ identified inconsistencies in Dr. Inwald's reports and concluded that his reports were neither credible nor supported by adequate documentation. They were for the most part conclusory. He also demonstrated a tendency to be biased in favor of appellant and was willing to modify his reports to establish appellant's disability. For example, in addition to reporting inconsistent diagnoses, the ALJ found that Dr. Inwald was providing diagnoses for diseases even though he was not treating appellant for those diseases. Because the ALJ is vested with authority to decide questions of credibility, his reliance on the consulting physician's reports was not in error. See Reynolds v. Bowen, 844 F.2d 451, 454-55 (7th Cir.1988) (defer to objective consulting opinion over opinion of treating physician who was biased in favor of claimant). Moreover, since Dr. Balakrishna was a cardiologist and Dr. Inwald a general practitioner, the ALJ was entitled to adopt Dr. Balakrishna's opinion. See Garrison v. Heckler, 765 F.2d 710 (7th Cir.1985) (defer to consulting specialist over treating physician who was a general practitioner).
 
 
 10
 Both examining physicians agreed that appellant suffered from a deep vein thrombosis in her left leg. Dr. Inwald states that this means appellant cannot sit without her feet being elevated above her heart, while Dr. Balakrishna stated that sitting is unaffected by her impairment. Dr. Balakrishna's report constituted substantial evidence that appellant was not disabled within the meaning of the Social Security Act.
 
 
 11
 Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior U.S. District Judge for the Western District of Michigan, sitting by designation