884 F.2d 580
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Maria SAAD, Plaintiff-Appellant,
v.
SECRETARY, H.H.S., Defendant-Appellee.
 No. 89-1074.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1989.
 
 Before BOYCE F. MARTIN, Jr., WELLFORD and MILBURN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Claimant, Maria Saad, filed a claim on January 24, 1986 for disability insurance benefits. Claimant alleges that she became disabled due to musculoskeletal difficulties involving her back, hands and legs on October 4, 1985. Claimant's eligibility ended March 31, 1986 (her sixty-fifth birthday). Claimant's application was denied initially and upon reconsideration.
 
 
 2
 Claimant requested a hearing before an ALJ before which she appeared and testified. Claimant was represented by counsel. A vocational expert, Ms. Pauline Pegram, also appeared and testified.
 
 
 3
 Claimant was sixty-four years old at the time the hearing was conducted, and at the time she applied for benefits in January 1986. Claimant has a high school education but worked as a bookkeeper and office manager. Claimant's job required her to sit approximately six hours per eight hour day, walking or standing one to two hours and to lift approximately ten pounds. Claimant last worked on October 4, 1985, and alleges disability due to musculoskeletal (and post-surgical) difficulties involving her back, hands and right leg, as well as a hearing loss condition.
 
 
 4
 Claimant contends that she became disabled on October 4, 1985, when she was hospitalized for a laminectomy. During the hearing, claimant complained of left knee and back problems as a result of a June, 1985 injury. She also testified that she felt the subsequent restorative surgery had not helped her conditions. Claimant testified that she experiences a constant burning back pain, with radiation into her right leg. She alleges that due to this pain she cannot walk very far, and must use a cane or walker at all times. Claimant testified that she has left arm and hand pain, cannot lift her left arm to her face, and that the fingers of her left hand are numb and will not close into a fist. Claimant is right handed. Claimant stated that she can only sit for twenty minutes at a time and that she receives no pain relief from her medication, but that it makes her drowsy. Claimant also testified that she had a seventy-five percent hearing loss in one ear and a twenty-five percent hearing loss in her other ear, that her hearing was augmented on the right by a hearing aid. Claimant still drives a car for short distances, and she also performs light housework, visits friends in her residential building, shops, prepares food in a microwave oven and watches television.
 
 
 5
 The medical evidence was conflicting. Dr. Okulski, the surgeon who performed the laminectomy, initially reported that the operation improved claimant's condition. Dr. Okulski stated that claimant was able to ambulate "much better" post-operatively and discharged claimant in improved condition.
 
 
 6
 Dr. Pederson, however, reported that following her surgery claimant required medications and a walker and was unable to lift, bend, or maintain one position for longer than three hours.
 
 
 7
 In November, 1985, Dr. Okulski reported that claimant continued to progress but she complained of sharp back pain and reported that she had fallen. However, in December, 1985, Dr. Okulski advised claimant to "seek total disability." It was only then that her operating physician adjudged her "totally and permanently disabled."
 
 
 8
 A vocational expert testified that claimant's past relevant work as a bookkeeper and office manager was skilled, sedentary to light work. The ALJ asked the vocational expert whether individual with most of the limitations to which claimant claimed, with exception of her complaints about pain, would be able to perform claimant's past work as a bookkeeper. The vocational expert stated that claimant could perform such work. However, the vocational expert testified that claimant would not be employable if she was unable to sit for more than twenty minutes, moderate pain would be preclusive of semiskilled employment as well as skilled employment because it would interfere with concentration.
 
 
 9
 The ALJ concluded that claimant retained the ability to perform her past relevant work. The ALJ noted that during the forty minute hearing claimant looked well and remained seated throughout with no apparent pain or discomfort. The ALJ noted the medical evidence, but concluded that it did not support claimant's subjective contentions regarding pain and fatigue. The ALJ considered all of claimant's impairments individually and cumulatively and yet concluded that claimant was not disabled. Claimant appealed to the Appeals Council which adopted the findings of the ALJ.
 
 
 10
 Claimant appealed to the district court which referred the matter to the magistrate. The magistrate found that the Secretary's determination was not supported by substantial evidence. She found that the ALJ failed to consider claimant's impairments collectively and that the record could not support a finding of not disabled.
 
 
 11
 The district court rejected the magistrate's findings and concluded that the Secretary's determination was supported by substantial evidence. The district court gave particular attention to the absence of objective medical evidence prior to the end of claimant's eligibility period that would support her claims of subjective limitations. The district court also recognized that because the Secretary found that claimant retained the ability to perform her past work, the burden was still on claimant. Therefore, the district court concluded that substantial evidence supported the Secretary's determination that claimant had not demonstrated that she was disabled.
 
 
 12
 The Secretary employes a five-step process to determine whether an individual is disabled within the meaning of the Social Security Act.
 
 
 13
 The Social Security Administration has promulgated 20 C.F.R. Sec. 416.920, which establishes a sequential process for evaluating the disability claim. Under this five-step sequential evaluation process, the Secretary initially determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant does not qualify as disabled. Second, the Secretary examines the severity of the claimant's impairment. If the claimant does not have a severe impairment which significantly limits the claimant's ability to do basic work activities, the claimant cannot qualify as disabled. Third, the Secretary compares the claimant's impairment to the "listing of impairment" in 20 C.F.R. Sec. 404, Subpart P, Appendix 1. The Secretary will find the claimant disabled if Appendix 1 lists the claimant's impairment or the claimant's impairment qualifies as the equivalent of a listed impairment. Fourth, if the claimant's impairment does not meet or equal a listed impairment, the Secretary next determines whether the claimant can perform the claimant's past work. If so, the claimant does not qualify as disabled. Finally, if the claimant cannot perform past work, the Secretary considers the claimant's residual functional capacity and the transferability of any skills the claimant may possess to determine whether the claimant qualifies as disabled.
 
 
 14
 Salmi v. Secretary, H.H.S., 774 F.2d 685, 687-88 (6th Cir.1985).
 
 
 15
 The scope of judicial review in social security cases is limited to determining whether the findings of fact made by the Secretary are supported by substantial evidence and deciding whether the Secretary employed the proper legal criteria in reaching those findings. 42 U.S.C. Sec. 405(g); Gibson v. Secretary, H.E.W., 678 F.2d 653, 654 (6th Cir.1984). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389 (1971). Substantiality of evidence must be based on the record as a whole, and must take into account whatever in the record fairly detracts from its weight. Garner v. Heckler, 745 F.2d 383, 388 (6th Cir.1984).
 
 
 16
 If the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Secretary to establish that the claimant possesses the residual functional capacity to perform "substantial gainful work which exists in the national economy." Frances v. Heckler, 749 F.2d 1562, 1566 (11th Cir.1985); see also Shellman v. Heckler, 821 F.2d 316, 320 (6th Cir.1987) (same).
 
 
 17
 Claimant contends that the Secretary's findings are not supported by substantial evidence. First, claimant contends that the Secretary erred in rejecting claimant's claims of pain under the Duncan standard. Second, claimant contends that the Secretary did not give appropriate weight to the opinion of the treating neurosurgeon. Third, and finally, because the Secretary erred in evaluating claimant's claims of pain and the opinion of the treating physician, the Secretary's conclusion that claimant could perform sedentary work, which requires sitting for six hours out of an eight hour day, is not supported by substantial evidence.
 
 
 18
 First, claimant contends that the Secretary erred in evaluating her subjective complaints of pain and discomfort. Under Duncan v. Secretary, H.H.S., 801 F.2d 847, 853 (6th Cir.1986), subjective complaints of pain are evaluated in light of objective medical evidence and whether the objectively determined medical condition is of such a severity that it can reasonably be expected to produce the alleged pain.[1] More specifically, in determining whether a claimant has a medically severe impairment, the degree of pain suffered by the claimant is considered if objective findings do not confirm that the claimant has a severe impairment. If the degree of pain alleged is significantly greater than that which can reasonably anticipated based on the objective physical findings, any additional limitations imposed by the pain of the claimant's functional ability beyond those limitations indicated by the objective medical evidence must be carefully explored before any conclusions about severity can be reached. Social Security Ruling 88-13 (issued July 20, 1988, but effective Aug. 20, 1980).
 
 
 19
 It is obvious from the record that claimant suffers from a significant impairment. It is the kind of impairment which can be expected to cause pain. The Secretary, however, must evaluate whether the severity of the pain claimed is consistent with the severity and type of impairment. If the court were reviewing the evidence de novo, it might very well conclude that the objective medical evidence supported claimant's claims as to the severity of her pain. The ALJ concluded otherwise and we cannot conclude that his findings are not supported by substantial evidence. See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (stating, "there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"); Kinsella v. Schweiker, 708 F.2d 1058 (6th Cir.1983) (stating that the court must affirm a decision of the Secretary, supported by substantial evidence, even if the court itself would reach a different conclusion on the same facts); see also Martin v. Secretary, H.H.S., 735 F.2d 1008, 1010 (6th Cir.1984) (similar case).
 
 
 20
 Second, claimant contends that the Secretary failed to give appropriate weight to the opinions of her treating neurosurgeon. Claimant's physician stated, as indicated, that claimant was "totally and permanently disabled." The Secretary contends that claimant's neurosurgeon's opinion is not supported by objective medical findings of record and, therefore, based on insufficient medical data. Basically, the Secretary contends that the physician conducted tests relating only to claimant's spinal condition and never performed tests that would support complaints of pain in the legs and hands.
 
 
 21
 A treating physician's opinion is normally accorded greater weight in the Secretary's evaluation of a disability claim. Lashley v. Secretary, H.H.S., 708 F.2d 1048, 1054 (6th Cir.1984). A treating physician's opinion must be based on sufficient objective medical data. 20 C.F.R. Sec. 404.1529 (1988); Houston v. Secretary, H.H.S., 736 F.2d 365 (6th Cir.1984). However, the finding of disability is to be made by the Secretary, not a physician. 20 C.F.R. Sec. 404.1527 (1988); Garrison v. Heckler, 765 F.2d 710, 714 (7th Cir.1985). Therefore, a treating physician's opinion that his patient is totally disabled is of little value to the Secretary independent from the objective medical findings upon which it is based.
 
 
 22
 We recognize this to be a close case. Dr. Okulski, the treating physician, is a reputable doctor and there is support for his observation that claimant has a significant impairment. The ALJ, however, carefully weighed the evidence presented in this case, and in determining the severity of claimant's condition, and the extent to which it restricted claimant's ability to work, the ALJ considered not only the opinions of the physicians but the testimony of the claimant and his observations of the claimant. The ALJ had sufficient support for his determination based upon the claimant's description of her daily activities, her appearance and demeanor at the hearing, and the medical evidence. The ALJ found the totality of the evidence not to support her claims that the impairment was of the severity required to support a finding of disabled prior to March 31, 1986, the date of her sixty-fifth birthday. At each stage of this determination, the burden was on claimant to prove disability because she had not shown that she could not do her past relevant work.
 
 
 23
 Third, and finally, substantial evidence supports the Secretary's findings that claimant retains the ability to do her past relevant work. Because the ALJ properly rejected claimant's assertions of severe pain, the vocational expert's testimony regarding the abilities of an individual with similar impairments as claimant is especially demonstrative.
 
 
 24
 This controversy concerns only a few months, or even weeks, of claimed onset of disability prior to Saad's reaching the age at which disability benefits would cease and she would be eligible for social security retirement benefits.[2] We have concluded that there is substantial evidence to support the Secretary's decision, but we rest somewhat easier in our conclusion knowing that Ms. Saad may now apply for or be receiving retirement benefits.
 
 
 25
 For the foregoing reasons, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 Duncan initially was an interpretation of a temporary provision of the Social Security Disability Benefits Reform Act of 1984, a statute which expired on January 1, 1987. Although claimant's case arose prior to the expiration of the regulations, this circuit continues to apply to evaluations of subjective complaints of disabling pain. See McCormick v. Secretary, H.H.S., 861 F.2d 998, 1003 (6th Cir.1988)
 
 
 [2]
 A recipient no longer receives disability benefits the month before the month a recipient becomes 65 years old. 20 C.F.R. Sec. 404.316(b) (1988). If the claimant is receiving "disability" benefits, these benefits are automatically changed to retirement benefits. 20 C.F.R. Sec. 404.316(b)(2). In this case claimant never would have received a "disability" benefit because Saad asserted a disability onset date of October 4, 1985. There is a five month waiting period after the date of disability, in which the claimant, under most circumstances, will not receive benefits. 42 U.S.C. Sec. 423(c)(2); 20 C.F.R. Sec. 404.315(d); Price v. Heckler, 733 F.2d 699, 701 (9th Cir.1984) (upholding constitutionality of the waiting period), cert. denied, 469 U.S. 1224 (1985). The SSA does not begin the waiting period until the first of the month following the alleged onset date. See Robbins v. Schweiker, 708 F.2d 340, 342 (8th Cir.1983); Sanchez v. Schweiker, 656 F.2d 966, 969-71 & n. 10 (5th Cir.1981), cert. denied, 456 U.S. 943 (1982). Therefore, Saad's first payment would come on April 1, 1986, one day after the expiration of her eligibility for disability benefits. See generally, F. Bloch, Federal Disability Law & Practice Sec. 2.49 (1984 & 1988 Supp.)